THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COM-
PANY v. LEVI T. RICE.

1. VALID ACT—*Valid Court.* Chapter 140 of the Laws of 1885 is con-
stitutional and valid, and the superior court of Shawnee county,
created by it, was a valid court from March 13, 1885, up to the first
Monday of April, 1887.

2. JUSTICE OF THE PEACE; *Limit of Jurisdiction.* A justice of the peace
has no authority outside of his own township to entertain a criminal
complaint made under ¿ 36 of the criminal code and issue a warrant
thereon for the arrest of the accused; but if he does so act outside
of his own township his proceedings are void.

3. MALICIOUS PROSECUTION; *False Imprisonment; Amendment of Peti-
tion.* Where a petition, intending to state a cause of action for an
unlawful arrest and imprisonment, sufficiently states a cause of action
for malicious prosecution, and defectively states a cause of action
for false imprisonment, and the evidence clearly shows a cause of
action for false imprisonment, and the defendant is not misled, *held,*
that the petition may be amended at any time during the trial so as
to make it sufficiently state a cause of action for false imprisonment;
and, *query,* is the variance between the petition and the proof mate-
rial?

4. SPECIAL DAMAGES, *to be Stated in Petition; Error.* Where a petition
sets forth a cause of action for an unlawful arrest and imprisonment,
but does not set forth any sickness nor any facts from which it might
be inferred or from which the law would imply that sickness would
necessarily follow from the facts alleged, or from the arrest and the
imprisonment, it is error for the court to permit evidence to be intro-
duced, over the objection of the defendant, tending to show that
after the arrest and the imprisonment the plaintiff became sick, and
that the sickness was produced by such arrest and imprisonment.

### *Error from Shawnee Superior Court.*

ACTION brought by *Rice* against *The Railroad Company,*
to recover damages alleged to have resulted from an unwar-
ranted criminal prosecution and imprisonment begun and car-
ried on by the defendant against the plaintiff. Trial at the
April Term, 1885, and verdict and judgment for plaintiff for
$3,000 damages, and for costs. The defendant brings the case
here. The material facts appear in the opinion.

38 — 36 KAS.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Waters & Chase,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.:  I. One of the principal questions urged by counsel for the plaintiff in error in this case, and one to which they have devoted ten pages of their brief, is whether the superior court of Shawnee county was, at the time of the trial of this case, or indeed at any time, a valid court.  It is claimed that it never was a valid court, and this upon the ground that the act of the legislature creating it is unconstitutional and void; and it is claimed that such act is unconstitutional and void for the reason that the court was to continue in existence from March 13, 1885, up to the first Monday of April, 1887, without any provision being made for the selection of a judge of such court except by an appointment by the governor. (Laws of 1885, ch. 140.)  We

1. Valid act; valid court.    think that the act is constitutional, and that the court was valid; and in support of this opinion, we would refer to the reasoning in the case of *Matthews v. Comm'rs of Shawnee Co.,* 34 Kas. 606, *et seq.,* and *the provisions of the constitution* there cited.

II. The next question presented for our consideration, and one to which counsel for plaintiff in error have devoted thirteen pages of their brief, is, whether the court or magistrate before whom the proceedings out of which the cause of action in this case arose was a valid court or magistrate at the time and place when and where such proceedings were instituted. On this question, counsel for the respective parties occupy different positions from those which they occupied upon the other question.  On this question, counsel for plaintiff in error, defendant below, claim that the action of the court or magistrate before whom such proceedings were instituted was at all times, in all places, and in all respects, legal and valid; while counsel for the plaintiff below claim that such court or

magistrate had no power or jurisdiction whatever to act at the time and place when and where such action was had. This action was instituted for the recovery of damages alleged to have resulted from an unwarranted criminal prosecution and imprisonment instituted and carried on by the plaintiff in error, defendant below, against the defendant in error, plaintiff below. It appears that during the months of June and July, 1883, one L. C. Hartman was a justice of the peace of Dodge township, Ford county; that Hamilton county was attached to Ford county for judicial purposes; that the plaintiff below, Levi T. Rice, was then at Coolidge, in Hamilton county, in the employment of the defendant below, the railroad company; that on June 29, 1883, the defendant below, through its agents, procured the said justice of the peace to go to Coolidge, a distance of about 115 miles from his office, and there to entertain a complaint made by one of the company's agents against the plaintiff below and seven others, charging them with grand larceny, to administer the necessary oath, and to then and there issue his warrant for the arrest of said persons so charged; and that the plaintiff, along with the others, was so arrested, and taken to Dodge City, and there imprisoned in the county jail until July 2, 1883, when he was discharged.

The real question now presented is, whether a justice of the peace has jurisdiction outside of his own township, and 115 miles from his office, but in a county attached to his own county for judicial purposes, to entertain a criminal "complaint" made under § 36 of the criminal code, and then and there to "*examine* on oath the complainant and any witness produced by him," and if from the evidence given to the justice by such complainant and any other witness or witnesses so produced, it has been made to "*appear* that any such offense has been committed," to then and there as a "*court* or *justice*" "issue a warrant" "requiring the officer to whom it shall be directed, *forthwith* to take the person accused and bring him before some court or magistrate of the county, to be dealt with according to law; and in the same warrant" to "require the of-

ficer to summon such witnesses as shall be therein named to appear and give evidence on the examination."

About all that is necessary for the decision of this question is to refer to the following decisions made by this court, and to the following sections of the constitution and the statutes, to wit: *Wilcox v. Johnson*, 34 Kas. 655, 659; *Phillips v. Thralls*, 26 id. 780; *Morrell v. Ingle*, 23 id. 32; *Comm'rs of Marion Co. v. Barker*, 25 id. 258, 260. Section 36 of the criminal code above referred to reads as follows:

"SEC. 36. Upon complaint made to any such magistrate that a criminal offense had been committed, he shall *examine* on oath, the complainant and any *witness* produced by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant; and if it shall *appear* that any such offense has been committed, *the court or justice* shall issue a warrant, naming or describing the offense charged to have been committed, and the county in which it was committed, and requiring the officer to whom it shall be directed forthwith to take the person accused and bring him before some court or magistrate of the county, to be dealt with according to law; and in the same warrant may require the officer to summon such witnesses as shall be therein named, to appear and give evidence on the examination."

Section 4, article 9 of the constitution in effect declares that justices of the peace are *township* officers.

Section 9, article 3 of the constitution provides for electing at least two justices of the peace in each township, and further provides that that number may be increased.

Section 11, article 3 of the constitution requires justices of the peace to reside in their respective townships during their terms of office.

Section 3 of the general township act makes the township the locality territorially which elects justices of the peace. (Comp. Laws of 1885, ch. 110, ¶ 6421.)

Section 4 of that act requires that justices shall reside and hold their offices in the townships for which they shall have been elected, as the constitution does.

Sections 35, 36 and 37 of that act clearly show, by providing for more than two justices in a township, and by other

provisions, that it was not intended that they should be per-ambulatory.

Section 1, chapter 140 of the Laws of 1877, reads as follows:

"SECTION 1. That any justice of the peace in any organized county to which any unorganized county is or may be attached for judicial purposes, *and in which there shall be no justice of the peace,* shall, in all criminal matters where a felony or misdemeanor, is charged, have the same jurisdiction over such unorganized county, and of offenses committed therein, as in such organized county; *and their processes may be served by the sheriff or any constable of such · organized county, and the offender be brought for hearing,* and witnesses compelled to attend *before such justice,* the same as in cases arising in such organized county." (Comp. Laws of 1885, ch. 83, § 1a.)

Section 2 of the general justices criminal act, declares that the offender must be *brought before* the justice for trial. (Comp. Laws of 1885, ch. 83, § 2.)

Sections 5 and 7 of that act use the expressions: *appear before* the justice, and *attend before* him.

Section 12 requires the jurors to *appear before* such justice; and it is the same way all through the civil code relating to justices.

In 1883 Hamilton county was an unorganized county, attached to Ford county for judicial purposes. (Laws of 1881, ch. 99, § 3.) And an unorganized county attached to another county for judicial purposes is in effect a township of such other county. (Laws of 1883, ch. 143, § 1.) And, as before stated, *every township must have at least two justices of the peace,* and may have more. (Const., art. 3, § 9; Gen. Township Act, § 4.)

We think it follows from the foregoing decisions and the sections of the constitution and statutes cited, that justices of the peace must perform all their official acts within their own townships, and that whenever they wander beyond the boundaries of their own townships, and into the jurisdiction of justices of the peace of other townships, they cease to be justices of the peace, and any attempted official acts there performed are mere nullities. There

2. Justices of the peace; jurisdiction, extent of.

are two sections of the statutes which tend to support the inference that justices of the peace may in some cases perform duties outside of their townships, but within their respective counties. These statutes are § 1 of the act relating to oaths, and § 7 of the act relating to criminal procedure. These statutes mention justices of the peace as "justices of the peace in their respective counties," and not as justices of the peace in their respective townships. We do not, however, think that the inference that might be drawn from these last-mentioned sections can overturn or destroy the unavoidable implications that must arise from the constitution and the other statutes. A justice of the peace is a township officer, under the constitution, and cannot be a county officer or a state officer. It is true that justices of the peace are in some sense "justices of the peace *in their respective counties,*" and also *in the state;* it is true that a justice of the peace may, within his own township, perform the duties of an examining magistrate in cases, or hear cases, arising *in any part of his county*; and it is also true that he may, within his own township, issue criminal process *to be served in any part of the state;* but it does not follow from these powers given that he may go into any part of the county or into any part of the state and there perform official acts. He can perform his official acts only in his own township. Criminal complaints must be taken to the justice, and not the justice to the criminal complaints. If for any reason it is more desirable to commence a criminal prosecution in one township than in another, it must be commenced before some justice of the peace of that township; but if it is preferable to commence before some particular justice, then the parties must go to that justice, and not transport him into some other township or county and into some other jurisdiction. His office is not migratory.

III. But it is claimed by the plaintiff in error that even if the superior court of Shawnee county was, while this action was pending before it, a legal and valid court, and even if the justice of the peace, while he was in Hamilton county, was beyond his jurisdiction and without legal power to act;

still, the plaintiff's petition is defective in not alleging this want of jurisdiction and this want of power to act. It is claimed that although it may be true that some of the facts necessary to constitute a cause of action for false imprisonment may have been set forth in the plaintiff's petition, still that the petition does not set forth all of them, nor enough of them to show a cause of action for false imprisonment; and therefore that this action must fail as an action for false imprisonment. In other words, it is claimed that plaintiff's petition does not set forth or show that any of the proceedings under which the plaintiff was arrested and imprisoned were the acts of the justice while he was outside of his township, or that the proceedings for any other reason were void. It is true that the petition is defective in these respects. It properly alleges an arrest and an imprisonment, and it alleges that the plaintiff below was arrested and imprisoned "unlawfully," but why the arrest and imprisonment were unlawful is not particularly stated. It may be possible that the pleader believed that they were unlawful wholly because they were malicious and without probable cause, and not even partly because the justice of the peace was outside of his jurisdiction and his proceedings therefore void; and here we might say that counsel for the plaintiff in error, in their brief, enter into an elaborate disquisition upon the distinctions that existed at common law between the old common-law actions of false imprisonment and malicious prosecution. These distinctions, however, have but little value in this state; for in this state all the old forms of action are abolished, and in their place only one form of action is given, called "a civil action," (Civil Code, § 10,) and in this form of action redress for all "injuries suffered in person, reputation, or property," (Const., Bill of Rights, § 18,) may be had. In this form of action the plaintiff, in drawing his pleading, which is called a "petition," is not required to know just what could have been set up in the old common-law action of "trespass" or "case," or what the distinctions between "false imprisonment" and "malicious prosecution" were; but all that he is required to know

or to do is *to know how to state the real facts of his case as they actually occurred, and to so state them;* and if these facts show a cause of action, he is entitled to his relief, whether such facts show a cause of action in "trespass," or in "case," or in both, or for "false imprisonment," or for "malicious prosecution," or for both; and no objection to the petition could be maintained, even if the facts should show a blending of the two kinds of action. (*Bauer v. Clay*, 8 Kas. 580; *Wagstaff v. Schippel*, 27 id. 454.) The elements of any cause of action are: (1) A *right* possessed by the plaintiff; (2) An *infringement* of such right by the defendant. And it can make no difference that such infringement is accomplished partly by a *direct and immediate force*, as that denominated "a false imprisonment," and partly by *fraud* or *indirect force*, as that denominated "a malicious prosecution;" for prosecutions for wrongs committed by direct force and those committed without direct force and merely by fraud or indirection, are not necessarily kept separate in this state. We think it is true that the petition in this case states a cause of action for malicious prosecution; but we think it is also true that it states, or comes very near stating, a cause of action for false imprisonment, and this cause of action was undoubtedly proved. If the petition had said nothing about a "warrant," or if it had stated that the "warrant" was void, which in fact it was, then it would have stated a good cause of action for false imprisonment. The object of this present action is to recover damages for the unlawful imprisonment of the plaintiff, for arresting him on June 29, 1883, near midnight, in his own house at Coolidge, and taking him from his bed and from his wife and children, and carrying him to Dodge City, a distance of 115 miles, and there confining him in jail for about two and one-half days, along with several other persons charged with crime, and amid surroundings loathsome and humiliating; and whether this imprisonment was procured by the defendant in maliciously and without probable cause suing out a *valid* warrant, or in unlawfully causing his arrest upon a *void* warrant, can make but very little difference to him.

The principal ground for damages in either case is the wrongful imprisonment, with its loathsome and humiliating surroundings. Under the circumstances of this case,
3. Malicious prosecution; false imprisonment; amendment of petition. if the plaintiff had asked to amend his petition at any time during the trial, and possibly at any time before or after judgment, so as to make it a perfect petition for false imprisonment, the trial court should have allowed it to be done. (Civil Code, § 139.) Besides, can it be said, even without amendment, that the variance between the pleadings and the proof is material, under the circumstances? The defendant was not misled. The defendant knew precisely when and where, and by whom and before whom, the complaint was made; and when and where, by whom, and under what circumstances, the warrant under which the plaintiff was arrested was issued; and all these matters the defendant itself, and by its own testimony, proved on the trial. Without deciding the question, we would cite, in support of the proposition that the variance between the pleadings and the proof is not material, the following statute and cases: Civil Code, § 133; *Mo. Valley Rld. Co. v. Caldwell,* 8 Kas. 244; *Mitchell v. Milhoan,* 11 id. 630; *Hummer v. Lamphear,* 32 id. 445. If this case is ever tried again, we think it would be well for the plaintiff to amend his petition, so as to make it show that the proceedings under which he was arrested and imprisoned were void.

IV. It is also claimed by the plaintiff in error, defendant below, that the court below erred in admitting evidence of special damages not specifically alleged in the petition. The court permitted the plaintiff as a witness to testify that shortly after his arrest and imprisonment he was taken down with a fever, and by reason thereof was obliged to give up work entirely. This evidence was permitted over the objections and exceptions of the defendant below, and under the claim, on the part of the plaintiff below, that such sickness was produced by the imprisonment. There is no allegation in the petition or elsewhere that the arrest or imprisonment caused the plaintiff to become sick, nor any allegation of facts from

which such sickness would necessarily follow as a consequence. The plaintiff in his petition simply claims damages for injury to his reputation as an honorable citizen, and for having suffered remorse and humiliation by reason of the prosecution, and for damage to his reputation as a business man. Under this petition evidence could not be given of any such consequential damage as sickness, for no notice was anywhere given that any such evidence would be offered. Upon this subject the court instructed the jury, among other things, as follows: "The plaintiff should be made whole for his loss of time, of health, his anxiety and suffering," etc. Mr. Sutherland, in his work on Damages, uses the following language:

"Under a general allegation of damages, the plaintiff may prove and recover those damages which naturally and necessarily result from the act complained of, for these damages, the law implies, will proceed from it. These are called general, as contradistinguished from special damages, which are the natural but not the necessary consequence.

"Special damages are required to be stated in the declaration, for notice to the defendant, and to prevent surprise at the trial." (1 Suth. Dam. 763.)

In the case of *Roberts v. Graham*, 73 U. S. 579, the following language is used:

"Special damages, whether resulting from tort or breach of contract, must be particularly averred in order that the defendant may be notified of the charge, and come prepared to meet it. *Special*, as contradistinguished from *general* damage, is that which is the natural but not the necessary consequence of the act complained of."

In 1 Chitty on Pleading, 16th American, from 7th English edition, page 411, the following language is used:

"Damages are either general or special. *General* damages are such as the law *implies* or presumes to have accrued from the wrong complained of. *Special* damages are such as *really* took place and are *not implied* by law, and are either superadded to general damages arising from an act injurious in itself, as where some particular loss arises from the uttering of slanderous words actionable in themselves, or are such as arise from an act indifferent and not actionable in itself, but injurious only in its consequences, as where words become

actionable only by reason of special damage ensuing.   .   .   .
And whenever the damages sustained have not necessarily
accrued from the act complained of, and consequently are not
implied by law, then in order to prevent the surprise on the de-
fendant, which might otherwise ensue on the trial, the plain-
tiff must in general state the particular damage which he has
sustained, or he will not be permitted to give evidence of it.
Thus, in an action of trespass and false imprisonment, where
the plaintiff offered to give in evidence that during his im-
prisonment he was stinted in his allowance of food, he was
not permitted to do so, because that fact was not, as it should
have been, stated in his declaration.   *And in a similar action,
it was held that the plaintiff could not give evidence of his health
being injured, unless specially stated."*

We think the court below erred in the admission of this
evidence.   No person could have anticipated from the facts
alleged in the plaintiff's petition, including the
arrest and imprisonment, that any such sickness
would have followed.   Such sickness would not
be a necessary result from such facts, nor would the law imply
any such result.   If it was the desire of the plaintiff to re-
cover enhanced damages because of his sickness, he should
have alleged the sickness in his petition, or at least he should
have alleged facts from which it might be inferred or from
which the law would imply that sickness would necessarily
follow.   No such facts were alleged.   This question was raised
in the court below by objecting to the introduction of the evi-
dence, by excepting to the ruling of the court permitting it
to be introduced, by exceptions taken to the instructions of
the court to the jury, by motion for a new trial, and by ex-
cepting to the ruling of the court overruling the motion for a
new trial.

A few other questions have been discussed by counsel in
this case, but we do not think it necessary to consider them.

The judgment of the court below will be reversed, and the
cause remanded for a new trial.

All the Justices concurring.

4. Special dam-
ages; error in
admission of
evidence.