CASE 30—PETITION ORDINARY—OCTOBER 4.

# Hansford's administratrix v. Payne & Co.

APPEAL FROM MERCER CIRCUIT COURT.

1. GROSS NEGLIGENCE IS NOT NECESSARILY THE SAME AS WILLFUL NEGLECT. To maintain an action under the third section of the act of 1854, it is necessary to charge willful neglect, either in express terms or in language which clearly and necessarily imports that high grade of negligence.

"Willful" is not to be taken as synonymous with "gross," a word which, when applied to negligence, has a well-defined legal meaning. (2 Duv. 576; 10 Bush, 677.)

2. ACTION AT COMMON LAW FOR INJURY FROM NEGLIGENCE—SELLING
A POISONOUS DRUG, ETC.

　　If an apothecary's clerk, in filling a physician's prescription,
delivers a poison instead of a harmless drug, through gross negli-
gence, whereby the person taking it is caused great suffering and
serious injury, the latter has a right of action at common law for
damages against the apothecary. (Fleet v. Hollenkemp, 13 B.
Mon. 227.)

3. ACTIONS FOR PERSONAL INJURIES SURVIVE.—At common law no
right of action accrued to any one for personal injuries resulting in
instant death; but if there was an appreciable interval of suffering
a right of action did accrue to the person injured, and that right
of action is made to survive to his personal representative by chapter
10 of the General Statutes.

4. *A recovery of punitive damages for the loss of life under section 3 of the
act of* 1854 *bars any other action for the injury* or any of its conse-
quences; and if a personal representative elects to sue and enforce
the right of action that survives to him, he will not be allowed
afterward to avail himself of the benefits of the punitive statute
and recover under its provisions.

C. A. & P. W. HARDIN, ⎫
GEO. R. McKEE, . . . ⎭　. . . . . . For Appellant,

CITED

　　　　Revised Statutes, chap. 28, secs. 1, 4.
　　　　General Statutes, chap. 10, p. 179; *Ib.* chap. 57, sec. 3.
　　　　Shearman & Redfield on Negligence, secs. 290, 291, 18, 14,
　　　　　293, 300.
　　9 Bush, 522, Lou. & Port. Canal Co. v. Murphy's adm'r.
　　9 Bush, 732, L., C. & L. R. R. Co. v. Case's adm'r.
　　4 Bush, 509, L. & N. R. R. Co. v. Robinson.
　　2 Duvall, 114, L. & N. R. R. Co. v. Collins.
　　2 Duvall, 577, Board of Int. Imp. Shelby Co. v. Scearce.
　　2 Met. 155, Wall v. Wayland.
　　4 Littell, 377, Mason v. Rogers.
　　13 B. Mon. 219, Fleet & Semple v. Hollenkemp.
　　14 B. Mon. 165, Eden v. Lexington & Frankfort R. R. Co.
　　22 N. Y. 194, Brown v. Buffalo & State Line R. R. Co.
　　23 N. Y. 465–86.　　　　　　30 Conn. 188.

KYLE & POSTON, . . . . . ⎫
BELL & HARDING, . . . . ⎬ . . . For Appellees,
J. B. & P. B. THOMPSON, ·JR., ⎭

CITED

3 Seld. 464, Montgomery Co. Bank v. Albany City Bank.

13 B. Mon. 466, Fible v. Caplinger.

18 Barb. 494, Budd v. Bingham.

19 Barb. 136, Gould v. Glass.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

The petition shows that the appellees are druggists or apothecaries, and that their prescription clerk in attempting to fill a physician's prescription put up croton oil instead of linseed oil, and that this mistake was made through the "gross and culpable negligence" of the clerk. It further shows that the oil so put up was, in consequence of the mistake, administered as directed by the physician to appellant's intestate, and "that it caused him great suffering and agony and did him serious and irreparable injury . . . and was the immediate cause of his death on that day; and besides great injury and suffering, deprived him of the remainder of his natural life."

Appellant sues as the personal representative of the deceased, and claims that she is entitled to recover "the sum of twenty-five thousand dollars due her said intestate for the wrongs, injuries, and damages done him as aforesaid," and she prays for judgment for that sum.

Without raising a question as to the sufficiency of the petition, appellees answered, and steps were taken by both parties in the preparation of the cause. Afterward appellants moved to dismiss the action upon the face of the pleadings, and their motion was sustained.

This practice is certainly irregular, if not wholly unauthorized, and the judgment of dismission can be sustained, if at all, only upon the ground that the petition presents no cause of action. It is not good as a petition under the third section of the act of 1854. Gross negligence is not necessarily the same with "willful neglect;" and we have held frequently that to maintain an action under the provisions of the section and act named it is necessary to charge "willful neglect," either in

express terms or in language which clearly and necessarily imports that high grade of negligence. We must assume that the legislature purposely used the term "willful," and that it did not intend that it should be regarded and treated as synonymous with "gross," a word which, when applied to negligence, has a well defined legal meaning. (2 Duvall, 576; 10 Bush.) But notwithstanding this conclusion, it does not follow that the facts set out in the petition do not authorize a recovery. If the intestate had survived the "suffering and agony" resulting from the poisonous potion administered to him, he would undoubtedly at the common law have had a right of action against the employers of the negligent prescription clerk. (Fleet & Semple v. Hollenkemp, 13 B. Monroe, 227.) If that right of action survives to his personal representative, then the petition is good. The 10th chapter of the Revised Statutes, which is continued in force by the 10th chapter of the General Statutes, provides that "no right of action for personal injury or injury to real or personal estate shall cease or die with the person injuring or the person injured, except actions for assault and battery, slander, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury; but for any injury other than those excepted an action may be brought or revived by the personal representative, or against the personal representative, heir, or devisee, in the same manner as causes of action founded on contract."

The wrongs and injuries complained of do not fall within either of the exceptions named in this statute, and according to its language literally construed it is plain that the right of action growing out of these wrongs and injuries survives to the personal representative of the injured person. But appellees claim that the statute was not intended to and does not create new rights of action, and argue with plausibility and force that personal injuries resulting in death were not at the common law the subject of civil actions. In support of the

last-named proposition they rely upon the cases of Eden v. The R. Co. (14 B. Monroe, 204); Murphy v. The Canal Co. (9 Bush, 522); and Case's adm'r v. The R. Co. (*Ibid* 728). These cases do sustain the doctrine that, in general, injuries affecting life can not be the subject of a civil action under the rules of the common law; but in Eden's case the court cite the case of Baker v. Bolton (1 Campbell, 493), in which it was conceded that the husband might recover for the distress of feeling and the loss of society from the moment of the injury to his wife up to the time of her death; and this court states the doctrine to be that for aggravated injuries to the person of the wife or child the husband or parent has an independent and separate cause of action for the loss of the society of the wife or the service of the child, notwithstanding the fatal result of the injuries, and Eden was refused relief upon the sole ground that the death of his wife was instantaneous.

So in the case of Murphy the death of the child was instantaneous, and therefore the court correctly said, that as the intestate had during its life no cause of action, none survived under the statute to its personal representative.

In the case of Case's adm'r the court drew the distinction between the character of actions embraced by chapter 10 and the causes of action created by the first section of the act of 1854. This section gives a right of action for the death of the intestate, whilst chapter 10 provides that actions for certain personal injuries shall survive instead of dying with the person injuring or the person injured, as was the rule prior to its adoption.

It is true it is said in that case that chapter 10 includes only causes of action growing out of personal injuries not the direct and immediate cause of the death, but the context and authorities cited and the case in hand show that the court had in view only such injuries as resulted in instantaneous or immediate death.

The court did not intimate in either of the cases reported in 9 Bush that a cause of action which has accrued to the person injured will not survive to the personal representative in case the injury be the cause of the death. The recovery sought in each of these cases was for the death itself, and in each the death was instantaneous, and therefore in neither could such a question have been considered or adjudicated. We are of opinion that the cases relied on do not sustain the assumption that causes of action growing out of personal injuries ultimately resulting in death are impliedly excepted from the operations of the chapter under consideration.

Whilst we hold that in order to authorize a recovery in such cases there must be an appreciable interval between the infliction of the injury and the death, and that no recovery can be had when the death is practically instantaneous or immediate, we think that the petition in this case shows that between the time the poison was administered and the moment at which the death occurred there was an appreciable interval of time during which the intestate endured "great suffering and agony."

For such suffering and agony the appellant is entitled to recover just as the intestate could have recovered if he had survived and had obtained perfect and permanent relief at the moment of his death.

We do not anticipate that this ruling will (as appellees' counsel fears) enable parties to sue under the third section of the act of 1854 for the death, and also under the provisions of chapter 10 for the damages accruing anterior to the time of dissolution. A recovery of punitive damages for the destruction of the life will certainly bar any other action for the injury or any of its consequences, and if a party elects to sue and enforce the right of action that survives to him he will not be allowed afterward to avail himself of the benefits of the punitive statute and also to recover under its provisions.

Vol. XI.—26

Judgment reversed and cause remanded, with instructions to overrule appellees' motion to dismiss, and for further proceedings consistent with this opinion.