ROACH, Adm'r, v. IMPERIAL MINING Co.

*(Circuit Court, D. Nevada.   June 6, 1881.)*

1. STATUTE  CONSTRUED — DEATH  BY  WRONGFUL  ACT — KINDRED— PLEADING.

It is not indispensable that a complaint, drawn to recover damages for death by wrongful act, under the statute of Nevada, should set forth that there are kindred named in the act. There may be a recovery without.

2. SAME.

But if proof is to be given of injury to kindred, the facts must be averred.

3. SAME.

Under that statute it is immaterial whether the death of the injured party is immediate or consequential.

Demurrer to complaint.

*Lindsay & Dickson,* for plaintiff.

*B. C. Whitman,* for defendant.

HILLYER, D. J.   This action is brought under a statute of Nevada requiring compensation for causing death by wrongful act, neglect, or default.   The objections taken are—*First,* that the complaint is ambiguous and uncertain; *second,* that there is no allegation that the plaintiff's intestate left kindred named in the statute; and, *third,* that it is alleged that the injury caused the immediate death of the person injured, and there can be no recovery.   In regard to the first point there certainly seems to be some ambiguity in the averments concerning the distance the cage fell in the shaft.   The shaft is alleged to be 2,800 feet deep.   The cable is alleged to

have broken at the 1,100 foot level, while the cage was ascending with the plaintiff's intestate from the 1,300 foot level, and to have fallen down the shaft, "to-wit, more than 300 feet." From the 1,100 foot level to the bottom of the shaft is 1,700 feet. The complaint does not show what it was that arrested the cage, if it did not go to the bottom of the shaft, nor anything which explains the averment, "to-wit, more than 300 feet." If there is anything in the case making the distance the cage fell material, it ought to be made plainer so that the defendant can meet it. If not, the ambiguity can be removed by striking out the words above quoted. All that seems material to aver is that the fall of the cage caused the death. The two remaining points are based upon the language of the statute of Nevada (section 115, Comp. Laws, p. 39) entitled "An act requiring compensation for causing death by wrongful acts, neglect, or default:"

"Section 1. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is, such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the persons who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount, in law, to a felony.

"Sec. 2. The proceeds of any judgment, obtained in any action brought under the provisions of this act, shall not be liable for any debt of the deceased: *provided*, he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child, but shall be distributed as follows: * * * If there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons: *provided*, every such action shall be brought by and in the name of the personal representative or representatives of such deceased person: *and provided further*, the jury, in every such action, may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

Under this statute there are two causes of action—two grounds upon which a recovery can be had: one for the injury to the deceased, and one for the injury to the kindred

named in the act. In the first case the jury may give such damages, pecuniary and exemplary, as they shall deem fair and just; and in the second may take into consideration the pecuniary injury to the kindred named in the act. The use of the words "pecuniary and exemplary," in the first clause of the proviso, and of the word "pecuniary," in the last, is significant, and shows that the legislature had both causes of action in view. Otherwise the last clause would serve no purpose. The statute of Nevada is different from any which has come under my observation in this particular, and it is evident that the draughtsman had in his mind certain expressions to be found in some of the cases, and intended to meet them by giving a right of action to the personal representative in which the rule of damages should be the same as it would have been if the deceased had lived and brought it, and in addition to permit the jury to consider the pecuniary loss to the kindred. This is further manifest from the fact that if there are none of the kindred named in the act, there may still be a recovery, and the amount will become general assets. It is evident that in those states in which the statute was construed to limit the measure of damages to the pecuniary loss of kindred, making that the only basis of a recovery, there was no escape from requiring an allegation that kindred were left, and the amount of damage suffered by them.

"We consider, upon the whole," say the court in *Safford* v. *Drew*, 3 Duer, 640, "that the only ground upon which the action can rest is the ground upon which the damages are to be recovered; that the prescription of the one ground or rule of damage has excluded every other, and thus rendered it indispensable, in order to support a suit under the statute, that pecuniary loss has resulted to the widow and next of kin."

This same construction, applied to the statute before me, would, so far as the kindred named in the act are concerned, limit the recovery to the pecuniary injury they had sustained. But is it not evident that this would be saying that an added incident was the principal and only thing?

In my judgment the New York court could never have used the language quoted if it had been construing the statute of Nevada. It could never have said that the pecuniary loss

to the wife and next of kin constituted the sole cause of action—the sole ground upon which the jury could base a verdict. What I have said indicates the result reached upon this point. Whatever the jury " may take into consideration" must be stated in the complaint, for there cannot, properly, be any proof or any deliberation by the jury upon a cause of action not stated. It is not, however, in my opinion, indispensable to the plaintiff's complaint that it should state as a ground of recovery the pecuniary injury to the kindred. The complaint as it stands is sufficient in that it contains, in this particular, allegations touching the injury to the deceased upon which the plaintiff can recover. But if it is a fact that there are kindred of the degrees named in the act, and that they have sustained some pecuniary injury by the death, and if the plaintiff proposes to offer proof of those facts, they must be alleged.

The argument upon the part of plaintiff, however, seems to have proceeded upon the theory that because the amount of any recovery might become general assets under the statute, proof might be given of these facts without an averment to support it. This, I think, cannot be done without violating the old and just principle that the allegations and the proof must correspond. Upon this point I have consulted *Blake* v. *The Midland Ry. Co.* 10 Law & Eq. 437; *The City of Chicago* v. *Major*, 18 Ill. 349; *Chicago & Rock Island R. Co.* v. *Morris*, 26 Ill. 400; *Conant* v. *Griffin*, 48 Ill. 410; *Railroad Co.* v. *Miller*, 2 Col. 465; *Safford* v. *Drew*, 3 Duer, 627; 9 & 10 Victoria, *c.* 93, p. 693; St. Cal. 1862, p. 447; St. Ind. 1862, § 584; Code Iowa, §§ 2525–26; Comp. Laws Mich. p. 1881, (1872;) 1 Rev. St. Ky. 223.

The more important point remains to be considered. It is alleged in the complaint that death was the immediate result of the injury received. The argument is that when death is the immediate or instantaneous result of an injury there is no space of time for a right of action to accrue to the injured party, and that none can, therefore, survive to the personal representative. On the other hand, it is contended that this statute gives, and was intended to give, a new right of action,

and does not continue any old right which the injured person had.

The argument in support of the demurrer assumes that the action which the personal representative brings is the same —to be measured by the same rule of damages—as if the deceased had commenced an action and had died during its continuance. It also assumes that there is such a thing as instantaneous death resulting from an injury to the person. The only case cited to sustain the point is *Kearney* v. *Railroad Co.* 9 Cush. 108. That case was decided upon a statute of Massachusetts passed in 1842, as follows:

"The action of trespass on the case for damage to the person shall hereafter survive, so that, in the event of the death of any person entitled to bring such action, or liable thereto, the same may be prosecuted or defended by or against his executor or administrator, in the same manner as if he were living."

And the construction placed upon this act was that "the case contemplated by the statute must be of such a nature that the party injured must himself have, at some time, had a cause of action;" and because the injured person was said to be instantly killed, the court said he never had a cause of action to survive. But under the Nevada statute it is not indispensable to show that the person killed lived long enough to have a right of action accrue, admitting the Massachusetts case to be sound. All that is necessary is that the wrongful act shall be such as would, if death had not ensued, have entitled the party injured to sue.

The statute acts on the wrong-doer, making him liable for damages, "notwithstanding the death of the person injured." The action is given to the personal representative for the purpose, in part, of compensating the kindred named in the act, which is a wholly new and distinct ground from that which the injured party would have had, and cannot be said in any sense to survive. The English statute, upon which the statute now being construed is drawn, is 9 & 10 Vict. *c.* 93, p. 693, passed in 1846, four years after the Massachusetts statute.

In *Blake* v. *Railway Co. supra*, the court of queen's bench,

in fixing a measure of damages, refused to allow anything beyond the pecuniary loss to the family of the deceased, saying, in answer to the argument that the party injured, if he had recovered, would have been entitled to a *solatium*, and therefore his representative shall be so on his death, "it will be evident that this act does not transfer this right of action to his representative, but gives to the representative a totally new right of action on different principles."

So, in New York, construing a statute passed in 1847 and framed upon this English statute, in the case of *Safford* v. *Drew, supra,* the court said "the statute, it is not to be contested, creates a new action." The title of the English act is "An act for compensating the families of persons killed by accidents," and that of New York, Illinois, California, Michigan, and Nevada is "An act requiring compensation for causing death by wrongful act, [in this state, acts,] neglect, or default." The first section of all is identical with the first section of the English act after the preamble, with one immaterial exception. And it has been uniformly held that these statutes created a new right, and introduced a new element of damages; the new right being the right to sue for damages for an act which caused death, and the new principle of damage being the pecuniary loss to the kindred resulting therefrom. See the cases cited above. If the wrongful act is one for which the deceased, had he lived, would have had a right of action, then the person doing the act is liable to an action by the personal representative, in the language of the act, "notwithstanding the death of the person injured." If the intention had been to give the right of action, with some limitation in respect to the time within which death must result, the legislature would have so expressed it. But the main object being to secure compensation to the kindred, it, as justly observed by counsel, was as much required in the case of a sudden as of a lingering death; when the death is the immediate as when it is not the immediate result of the injuries. I cannot discover, in the language of the act, any intention to limit the recovery to the one case rather than the other. The right of action appears to me to be given in such

language as renders it immaterial whether death was the immediate result of the injury, or whether time intervened. The case in 9 Cushing is not an authority here.    The statute of Massachusetts, as construed by the court of that state, was passed to keep alive a cause of action which the party dying had at the time of his death; that of Nevada to give a new right of action, in which one measure of damages should be the pecuniary loss to the kindred.

Upon the language of the Code of Tennessee, which is not so clear as that of the statute of this state, it has been held that the fact that death was instantaneous was not material. *Railroad Co.* v. *Price*, 2 Heisk. 580.    This case was made stronger by the holding afterwards that the action under the Code "was for the same cause as it would have been had the action been brought by the injured party in his lifetime."    *Fawlks* v. *Railroad*, 5 Bax. 663.    In this latter case it was again held that the Code made no distinction between cases of instantaneous death and others.    The case of *Brown* v. *Railroad Co.* 22 N. Y. 191, is a decision upon a statute identical with the Nevada statute, so far as the first section, which confers the right of action, goes, and is precisely in point for the plaintiff.    It was there held that it makes no difference, under the New York statute, whether the death is the immediate or instantaneous result, or whether it is consequential.    So in Connecticut, under a statute providing that "actions for injury to the person, whether the same do or do not result in death,    *    *    *    shall survive to the executor or administrator."    Gen. St. of Conn., Revision of 1866, § 98.    It has been held that the words "whether the injury do or do not result in death," have put an end to the common-law maxim in this class of cases that personal actions die with the person, and that it was immaterial whether death was instantaneous or consequential.    The case in 9 Cushing is said to be somewhat "nice and technical," even as a construction of the statute of Massachusetts; but because the language of the statutes of the two states was not the same, it was not regarded by the supreme court of Connecticut as an authority which it was necessary to over-

rule. *Murphy* v. *Railroad Co.* 29 Conn. 496; *Same* v. *Same*, 30 Conn. 184.

My attention has not been called to any decision, upon a statute at all like that of Nevada, holding a contrary doctrine. My conclusion is that the demurrer must be sustained upon the first point discussed, and overruled upon the last; and it must be overruled upon the second ground for reasons stated in this opinion, with leave to the plaintiff to amend by inserting the facts in regard to the kindred as named in the act, if so advised. Whether exemplary damages may be given in every case, or are to be confined to those cases in which they would have been allowed before the passage of the act, is a question upon which I intimate no opinion. See *Myers* v. *San Francisco*, 42 Cal. 215.

The demurrer is sustained, as stated, with leave to plaintiff to amend on or before the rule-day in July, and defendant to plead on or before the rule-day in August next.