ELIZA CORCORAN, administratrix, *vs.* BOSTON & ALBANY RAILROAD COMPANY.

Hampden.   Nov. 14. — 15, 1882.   LORD, J., absent.   DEVENS & W. ALLEN, JJ., did not sit.

An action cannot be maintained against a railroad corporation for personal injuries occasioned to a brakeman in its employ, by falling from a moving train, and resulting in death, if the evidence wholly fails to show how he fell, what he was doing at the time, whether his death was instantaneous, or whether he endured any conscious suffering before his death.

TORT, by the administratrix of George Corcoran, for personal injuries sustained by her intestate in his lifetime, while a brakeman upon a freight train of the defendant corporation. The declaration alleged that the injury was caused by the intestate being knocked from a ladder on the side of a car, (upon which it was his duty to go while the train was passing through a rocky cut,) by an accumulation of ice and snow, which the defendant had negligently suffered to be there.

At the trial in the Superior Court, before *Putnam*, J., there was evidence tending to show the following facts:

At a point on the defendant's road was a cut, the sides of which were of rock, and, on the side where it was contended the intestate was injured, the rail was five or six feet from the face of the rock. In the winter season, ice formed on the sides of the cut, caused by the dripping of water through and down the face of the rock, several inches sometimes forming in a single night. On the night when the accident happened, ice projected about two feet from the face of the rock, and, near the centre of the cut, the space between the rail and the face of the ice was from twenty-eight inches, at a point one foot above the track, to thirty-five inches at a point four feet above the track. A freight

car projects twenty-four inches beyond the rail, and a man on the ladder on the side of the car would project from one to two feet from the side of the car. The accident happened on the night of February 5, 1881, which was a very cold night.

While the train was going through the cut, at the rate of fifteen miles an hour, the intestate was seen to go down from the top of a house car to a platform car to set the brake on that car, and this was the last seen of him alive. The brake on the platform car was afterwards found to be set. His next duty was to ascend a ladder on the side of a house car, in the rear of the platform car, to set the brake on that car. His lighted lantern was seen on the top of this car, and the lantern was afterwards found there.

The train of cars was moving towards the east, and the greater part of the intestate's dead body was found a quarter of a mile to the eastward of the centre of the cut. An impression was found in the snow by the side of the track just east of the place where the ice on the side of the cut came nearest to the track, indicating that something heavy had fallen there. Two hundred feet east of this point, the first blood spots on the snow were found, and portions of the body were found between the place where the blood spots were and the place where the rest of the body was found. Between these places there were indications on the rails of the track showing that the wheels of the cars had passed over portions of the body.

Some of the fatal injuries to the body would not have caused death at once, while others would have done so.

It was the duty of the section men employed by the defendant to see that the cut was kept in a proper and safe condition, and free from ice.

At the request of the defendant, the judge ruled that the plaintiff was not entitled to maintain the action, ordered a verdict for the defendant, and reported the case for the determination of this court. If the ruling was correct, judgment was to be entered on the verdict. If the case should have been submitted to the jury, the verdict was to be set aside, and a new trial granted.

*E. H. Lathrop*, for the plaintiff.

*A. L. Soule*, for the defendant.

BY THE COURT. The burden of proof is upon the plaintiff to show that her intestate was using due care when the accident happened, and that his death was not instantaneous, so that a right of action existed in him which would survive to her. It is impossible to tell from the evidence how the intestate fell from the cars, what he was doing at the time, whether his death was instantaneous, or whether he endured any conscious suffering before his death. These questions are left to conjecture. The evidence would not justify the jury in finding that the plaintiff had sustained the burden of proof which was upon her as to these points, and the Superior Court therefore rightly directed a verdict for the defendant. *Moran* v. *Hollings*, 125 Mass. 93, and cases cited. *Judgment on the verdict.*