DILLON ET AL., RESPONDENTS, *v.* GREAT NORTHERN RAIL-
WAY CO., APPELLANT.

(No. 2,625.)

(Submitted March 10, 1909.  Decided March 23, 1909.)

[100 Pac. 960.]

*Railroads — Death by Negligence — Fellow-servant Act—Statu-
tory Construction—Survival Statutes.*

Survival Statutes—Nature of.

1. A survival statute presupposes the existence of a cause of action in favor of the deceased; it does not create a new cause of action, but carries forward and preserves to his heirs or representatives the right which deceased had before his demise.

Railroad Employees—Death by Negligence—Fellow-servant Act—Construction—Survival Statute.

2. *Held,* that Chapter 1 of the Session Laws of 1905 (Laws 1905, p. 1 [Revised Codes, sections 5251, 5252]), which provides in section 1 that railroad companies shall be liable for all damages sustained by any of their employees because of the neglect, willful wrongs, etc., of fellow-servants, and in section 2 that in case of the death of any such employee in consequence of any injury so sustained, the right of action shall survive and may be prosecuted and maintained by his heirs or personal representatives, is a survival statute, and does not create a new cause of action in favor of the heirs for damages sustained by them by reason of the death of deceased.

Same—Instantaneous Death—Survival of Action.

3. Where in an action brought by the heirs of a railroad employee, under the provisions of Chapter 1, Laws of 1905, p. 1 (Revised Codes, sections 5251, 5252), to recover damages for the alleged wrongful killing of deceased, the agreed statement of facts showed that his death in a collision was instantaneous, there could not be any survival of an action in the heirs, since, the wrong and the death of decedent having been concident in point of time, no cause of action ever accrued in his favor, and therefore none could survive in the heirs.

*Appeal from District Court, Flathead County; J. E. Erick-
son, Judge.*

ACTION by Winifred Dillon in her own right and as guardian of her minor children, against the Great Northern Railway Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

*Mr. I. Parker Veazey,* and *Mr. W. N. Noffsinger,* for Appellant.

Instantaneous death prevents the birth of the deceased's statutory cause of action, and hence also prevents the possibility of survivorship. (*The Corsair (Barton* v. *Brown),* 145 U. S. 335. 12 Sup. Ct. 949, 36 L. Ed. 727; *Kearney* v. *Boston R. R. Corp.,* 9 Cush. 108; *Hollenbeck* v. *Berkshire R. R. Co.,* 9 Cush. 478; *Kennedy* v. *Standard Sugar Refinery,* 125 Mass. 90, 28 Am. Rep. 214; *Moran* v. *Hollings,* 125 Mass. 93.) The negligence complained of, and which constitutes the foundation of the alleged right of action, was not completed while Dillon lived, and, therefore, while his heirs may have a cause of action under another statute, he never had any cause or right of action; and as appellant was never liable to him, under this statute, "for a second of time," it cannot be liable to plaintiffs under the Act of 1905. A right of action which he never had cannot survive and be enforced by his heirs. (*Belding* v. *Black Hills & Ft. P. R. Co.,* 3 S. D. 369, 53 N. W. 750; see, also, cases cited above.)

The manifest purpose of the statute was to give its benefits to employees engaged in the hazardous business of operating railroads. When thus limited it is constitutional; when extended further it becomes unconstitutional. (*Akeson* v. *Chicago B. & Q. R. Co.,* 106 Iowa, 54, 75 N. W. 677; see, also, *Johnson* v. *St. Paul etc. Ry. Co.,* 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; *Missouri etc. Ry. Co.* v. *Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Chicago etc. R. R. Co.* v. *Pontius,* 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675; *Bucklew* v. *Central Iowa Ry. Co.,* 64 Iowa, 603, 21 N. W. 103.) An employee of a railroad company, whose duties are not extra-hazardous, does not, by merely entering a railroad car to be trans-

ported, come within the constitutional powers of the law-making body of the state, in the exercise of which class legislation of this kind may be lawfully enacted; they are not engaged in an extra-hazardous pursuit; they do not become exposed to any perils, while engaged in the discharge of their duties, which are not always equally shared with them by all other travelers. The above is equally true of an assistant roadmaster; he is not engaged in a perilous pursuit. (*Butler* v. *Chicago etc. R. Co.*, 87 Iowa, 206, 54 N. W. 208.)

The liability created by this statute requires two coexisting conditions to give it birth, viz., there must be an employee injured who, at the time of the accident, was "engaged in the hazardous business of operating railroads," and this injury to such an employee must have been caused by the negligence of another employee, who was, at that time, also employed and engaged in "the use and operation of a railroad." (*Stroble* v. *Chicago etc. Ry. Co.*, 70 Iowa, 555, 59 Am. Rep. 456, 31 N. W. 66; see, also, *Foley* v. *Chicago R. I. & P. Ry. Co.*, 64 Iowa, 644, 21 N. W. 124; *Malone* v. *Burlington C. R. & N. Ry. Co.*, 65 Iowa, 417, 21 N. W. 756, 54 Am. Rep. 11; *Reddington* v. *Chicago, M. & St. P. Ry. Co.*, 108 Iowa, 96, 78 N. W. 800.)

*Messrs. Walsh & Nolan,* and *Mr. D. F. Smith,* for Respondents.

Assuming that the Act in question is a survival statute, does an instantaneous death forbid a recovery under the statute? The question has been so often determined to the contrary that there is no doubt that the rulings to that effect must be deemed to have been weaved into the statute. The idea comes from some early Massachusetts cases which the courts of this country generally, and even of the neighboring New England states, have declined to follow. (*Broughel* v. *Southern N. E. Tel. Co.*, 72 Conn. 617, 45 Atl. 437, 49 L. R. A. 404.) The same indisposition to follow the reasoning of the Massachusetts cases is found to have prevailed quite generally. Tennessee declined, though as shown in *Roach* v. *Imperial M. Co.*, 7 Fed. 698-704, 7 Saw. 224, its court held that the Act of that state is a sur-

vival statute. (*Nashville etc. R. R. Co.* v. *Prince,* 2 Heisk. 580; *Fawlkes* v. *N. & D. R. R.,* 5 Baxt. 663.) The question was disposed of in New York contrary to the Massachusetts rule, though the statute was treated as though the right of action of the deceased survived to his representatives. (*Brown* v. *Buffalo & S. L. R. Co.,* 22 N. Y. 194.) And Judge Comstock sensibly declared in *Whitford* v. *Panama R. Co.,* 23 N. Y. 465, that there is no such thing as a strictly instantaneous death. The supreme court of South Carolina, likewise, though holding their Act to be a survival statute (*Price* v. *Richmond & Danville R. R. Co.,* 33 S. C. 556, 26 Am. St. Rep. 700, 12 S. E. 413), held that it permitted a recovery whether the death was instantaneous or lingering. (*Reed* v. *Northeastern R. Co.,* 37 S. C. 42, 16 S. E. 289.) In Kentucky a like conclusion was reached. (*Givens* v. *Kentucky C. R. Co.,* 89 Ky. 231, 12 S. W. 257.) The Massachusetts cases are followed in Maine, but the results arrived at have been overcome by recent statutory enactments. The supreme court of South Dakota was convinced by them, however (*Belding* v. *Black Hills etc.,* 3 S. D. 369, 53 N. W. 750), and they were held persuasive in Mississippi. (*McVey* v. *Illinois Cent. R. R. Co.,* 73 Miss. 487, 19 South. 209.) Perhaps little, if anything, could be added to the discussion of the subject on its merits, if it has any, as it is set forth in the opinions referred to. Nor is there any necessity for any close discrimination in the matter, since the statute in question was adopted from the state of Iowa and has been authoritatively construed by the highest court of that state as permitting a recovery in cases of instantaneous death. The supreme court of that state seems to have been originally somewhat persuaded by the reasoning of the Massachusetts cases. (*Sherman* v. *Western Stage Co.,* 24 Iowa, 515.) Later it recognized that there can be no such thing as a strictly instantaneous death. (*Kellow* v. *Central Iowa Ry. Co.,* 68 Iowa, 470, 56 Am. Rep. 858, 23 N. W. 740, 27 N. W. 466.) And finally it squarely adjudicated that the fact that the death was instantaneous was no obstacle at all to recovery. (*Conners* v. *Burlington etc. Ry. Co.,* 71 Iowa, 490, 60 Am. Rep. 814, 32 N. W. 465; *Worden* v. *Humes-*

*ton & S. R. Co.*, 72 Iowa, 201, 33 N. W. 629.)   The legislature of this state, adopting the Iowa statute, and being uncertain whether our general survival statutes might not be construed as being as comprehensive as those of Iowa, added to the law a section which would put it past doubt that an action could be maintained against the common employer in the case of a death resulting from the negligence or willful wrongs of a fellow-servant when the wrong was connected with the use and operation of a railway.

Is the law a survival statute?   The bare fact that the word "survive" occurs in the statute is not at all controlling. Logically, there can be no such thing as a survival of a right to recover for death.   The man who died, never, under any circumstances, whether his death was lingering or instantaneous, had any right of action to recover for his own death.   So no action to recover for his death could possibly "survive" in the sense in which the word is used to indicate the right to sue, for instance, on a promissory note given to the decedent.   The statute is to be construed in the light of the general legislation on the subject.   We are to try to get at what the legislature meant—whether to give a new and independent right of action to the heirs for the death, or whether it intended to carry over to them a right of action which the deceased would have had if he had not died.

It is to be borne in mind that the "general theory of American statutes on this subject is that the action" is "newly created," and is "entirely distinct from any action which the deceased might have had, had he lived."   And this for two reasons, namely, that the action is for his death, and he could have no action for that; and second, because it is not fair to enable the heirs to recover the equivalent of all he could earn, and more particularly is it not fair to permit them to recover for the pain and suffering he endured.

We start, then, with the assumption that the legislature had no purpose to depart from the general course and current of legislation on the subject.   And, examining the language used, we find it supports the view that they did not intend to do so.

Appellant says that it is the right of action given to the injured servant, referred to in the first section, which is carried over to his heirs or personal representatives—it is his right of action which survives. But the statute does not say "his" right of action survives, but "the" right of action; that is, the right of action lives after him in his heirs or personal representatives. Besides, if it was intended that there should be simply an abrogation of the common-law rule "*Actio personalis moritur cum persona*," the section would have ended with the word "survive." That would have been sufficient. His right of action would then accrue to his executor or administrator. It was wholly unnecessary to make any further provision. An Act even more equivocal and ambiguous in its language, in view of similar considerations, was held to grant a new right and not to be a survival statute in *Matz* v. *Chicago & A. R. Co.*, 85 Fed. 180-188.

Was the deceased within the class protected by the statute? The great weight of modern authority is to the effect that those engaged in construction or repair work, however it be with the accountant or the lawyer employed by the railroad company, are fellow-servants of the train crews operating the trains on which they ride in going to or from their work, and that for the negligence of the latter, resulting in the injury to the former, there is no right of recovery at common law. (*Texas & Pacific R. Co.* v. *Smith*, 67 Fed. 524, 14 C. C. A. 509, 31 L. R. A. 321; see, also, *Kilduff* v. *Boston etc.*, 195 Mass. 307, 81 N. E. 191, 9 L. R. A., n. s., 873.)

The statute was unquestionably intended for the relief of all those who would be barred of a right of recovery by reason of the fellow-servant rule, who suffered injuries in the use and operation of any railroad in this state, inflicted in the course of their employment. Its benefits are held, in Iowa, to extend to all employees who are engaged in the business of operating railroads, or who are, by the nature of their employment, exposed to the hazard incident to moving trains. (*Smith* v. *Humeston & S. R. Co.*, 78 Iowa, 583, 43 N. W. 545; see, also, *Schroeder* v. *Chicago etc. Ry. Co.*, 47 Iowa, 375; *Rayburn* v.

*Central I. Ry. Co.,* 74 Iowa, 637, 35 N. W. 606, 38 N. W. 520;
*Smith* v. *Chicago & G. W. Ry. Co.* (Iowa), 80 N. W. 658;
*Chicago, M. & St. P. Ry. Co.* v. *Artery,* 137 U. S. 507, 11 Sup.
Ct. 129, 34 L. Ed. 747.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought by Winifred Dillon in her own right, and as guardian of her minor children, against the Great Northern Railway Company to recover damages for the alleged wrongful killing of Thomas Dillon, the husband of Winifred Dillon and the father of the minor children. The cause was submitted to the district court upon an agreed statement of facts. The facts agreed upon, so far as necessary to be considered on this appeal, are that Thomas Dillon was employed as assistant roadmaster by the defendant, which is a railroad company engaged as a common carrier of freight and passengers between St. Paul and Seattle; that on September 20, 1906, while Dillon was properly riding in the caboose of a freight train, east-bound from Whitefish, the caboose in which he was riding was run into by another east-bound train, "and, by reason of said collision, the said Thomas Dillon was instantaneously and immediately killed, and did not live or survive for a second of time after said accident; that said collision and the resultant instantaneous killing of the said Thomas Dillon was due to the negligence and carelessness of employees of said defendant railway company, who were fellow-servants of the said Thomas Dillon; * * * that said collision, resulting in the instantaneous killing of said Thomas Dillon, was not in any manner, or to any extent whatever, due to the negligence of the said Thomas Dillon, or of said defendant railway company." From a judgment rendered and entered in favor of the plaintiffs, the defendant railway company appeals.

1. It was a rule at common law that, if one person was injured by the wrongful act of another, he had a right of action against the wrongdoer for damages sustained by him: (a) If the injured party died before bringing his action, the cause of

action literally died with him; (b) if he brought his action, but died before judgment, the action abated with his death; (c) if the injuries were occasioned by the negligence of his fellow-servant, the injured party could not recover from the common employer, if that fact appeared. The rule is recognized and enforced in this country generally; in some of the states as a rule of the common law, while in others it is embodied in statutes. However, in practically every state the rule has been modified by abolishing subdivisions (a) and (b), and substituting in lieu thereof provisions by which, in case of the death of the injured party, his heirs or personal representatives may prosecute his right of action, and recover for the benefit of his estate. These statutes are commonly designated "survival statutes." In some of the states the rule is further modified by permitting recovery from the common master by one servant whose injuries are occasioned by the negligence of a fellow-servant. Statutes making this qualification are generally referred to as "fellow-servant statutes." The above rule of the common law, as modified by our general survival statute (sec. 6494), and our fellow-servant statute (secs. 5251, 5252, Revised Codes), has been recognized and enforced in this state. Every survival statute presupposes the existence of a cause of action in favor of the injured party. Such a statute does not create a new cause of action, but only carries forward the right which the injured party had before his death.

2. It was also a rule of the common law, generally speaking, that for the death of one person caused by the wrongful act of another there was not any remedy by civil action. Because of the harshness of this rule the English parliament in 1846 enacted a statute (Stats. 9 & 10 Vict., c. 93), generally known as "Lord Campbell's Act." This Act is the model after which a like statute has been enacted in nearly every state in this Union. While our statutes may vary from the English Act in some minor particulars, they are all framed with the same general purpose in view, viz., to give to certain kindred of the deceased a right of action for damages which *they* sustain by reason of the death of the deceased. Our statute is found in

section 6486 of the Revised Codes, and, while it bears slight resemblance to the English statute, the general purpose is the same.

To mention the fact is sufficient to call attention to the marked distinction between an action prosecuted under the common-law rule first above mentioned and one prosecuted under Lord Campbell's Act. In the first case the injured party seeks compensation for his mental and physical pain and suffering, for medical attention, for loss of time, and for decreased earning capacity. In the second case the kindred seek compensation for such portion of the deceased's earnings as would have come to them had he lived, and, possibly, for the loss of companionship and the like. In the first case the damages sought are the damages which the injured party himself sustained. In the second case the damages sought are those which his kindred sustained.

But to avoid the defense that Dillon's injuries resulted from the negligence of his fellow-servants, this action is prosecuted under the provisions of our fellow-servant statute above. It is an Act of the ninth legislative assembly (Laws 1905, p. 1), and provides:

"Section 1. Every person or corporation operating a railway or railroad in this state, shall be liable for all damages sustained by any employee of such person or corporation in consequence of the neglect of any other employee or employees thereof, or by the mismanagement of any other employee or employees thereof, and in consequence of the willful wrongs, whether of commission or omission, of any other employee or employees thereof, when such neglect, mismanagement or wrongs, are in any manner connected with the use and operation of any railway or railroad on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding.

"Section 2. In case of the death of any such employee in consequence of any injury or damage so sustained, the right of action shall survive and may be prosecuted and maintained by his heirs or personal representatives."

The Act is carried forward into the Revised Codes as sections 5251 and 5252. It may be an open question whether the legislature intended to create a new cause of action, or only intended to abolish the defense of the negligence of a fellow-servant. But, assuming that it was the intention to create a new cause of action, our first inquiry then is: In whose favor does such cause of action arise? It is argued by counsel for respondents that it arises in favor of the heirs, and, but for their earnest contention, we would deem the answer to this question so manifest from the statute itself as not to require serious consideration. In the first instance the title of the Act indicates the purpose of the legislation. The title reads: "An Act to determine the liability of persons or corporations operating railways or railroads in this state for damages sustained by employees thereof, and to declare void contracts restricting such liability." The avowed purpose is to provide for determining the liability of railroad companies to their employees for damages sustained by the employees—not for damages sustained by their heirs. The first section of the Act emphasizes this view. It provides that the railroad company shall be liable for all damages sustained *by any employee,* and, practically to conclude argument upon this question, it provides that "no contract which restricts such liability shall be legal or binding." Counsel for respondents, however, seem to rely chiefly, if not altogether, upon the second section; but we are unable to find any suggestion here which sustains their view. This section seems to us exceedingly plain. It does not mention any new cause of action. It only refers to *the right of action.* What right of action? Clearly, the right of action recognized by the first section. The expressions "such employee" and "injury or damage so sustained" either refer to the same subjects in the first section, or they are absolutely meaningless. That these expressions and "the right of action" do refer to the kindred subjects in the first section we entertain no doubt. This second section is clearly a survival statute, and was intended for nothing else.

The manifest purpose of the whole Act is to enable an employee of a railroad company to recover damages from the com-

pany for injuries inflicted upon him by reason of the negligence
of a fellow-servant, and, in case death results from such injuries
after the cause of action has accrued, then to enable his heirs
or personal representatives to prosecute the action to judgment.
If it was intended to create a new cause of action in favor of
the heirs for damages sustained *by them,* the legislature cer-
tainly did not give any intimation of such intention in the title
of the Act, and securely concealed such intention in the body of
the statute.   If such intention was expressed in the body of the
statute, it is exceedingly doubtful whether that part of the stat-
ute would be effective, since the title does not cover that feature
at all; but we hold that such intention is not expressed either
in the title or body of the Act.   The Act does not create a cause
of action in favor of the heirs.

While we feel reasonably certain that the complaint in this
action was framed upon the theory that the action is one to
recover the damages which these kindred suffered on account of
Dillon's death, we are not absolutely satisfied that this was the
intention of the pleader, and we are led, therefore, to consider
a second question—and this one arises upon the assumption that
this is an action to recover damages which resulted to Dillon's
estate as a consequence of his death—and that question is: Does
the agreed statement of facts show a cause of action in favor of
Dillon which survived his death?   The agreed statement shows
that Dillon's death was instantaneous, and that he did not sur-
vive for a second of time after the accident.

Our general survival statute (section 6494 above) relates to
a cause of action which "arose in favor of such party prior to
his death."   Section 2 of the Act of 1905 provides that, in case
of the death of the employee in consequence of an injury sus-
tained as set forth in section 1, then the right of action for
damages occasioned by such injury shall survive.   It goes with-
out saying that a thing which never existed cannot survive.   In
order for the right of action to survive it must have existed, and
the legislature understood these matters, and used the term
"survive" accordingly.   Of course, it is elementary that a cause
of action cannot exist in favor of a deceased person.   In using

the phrase "in consequence of any injury," then, we think the legislature meant to express the same idea that is expressed in the general survival statute above; and the meaning of this Act of 1905 is that, if a cause of action arose in favor of the injured employee prior to his death, the right of action which he thus had survives, and may be prosecuted by his heirs or personal representatives.    Did a cause of action arise in favor of Dillon prior to his death?

A cause of action is the right which a party has to institute a judicial proceeding.    (*Meyer* v. *Van Collem,* 28 Barb. (N. Y.) 230.)    As applied to a tort, it is composed of the right of the plaintiff and the wrong of the defendant (*Veeder* v. *Baker,* 83 N. Y. 156), and the wrong of the defendant is the infringement of plaintiff's right.    (*Atchison, T. & S. F. R. Co.* v. *Rice,* 36 Kan. 593, 14 Pac. 229.)    To constitute a cause of action for a tort, then, the plaintiff's right must have been infringed by the wrongful act of the defendant, with the result that plaintiff suffered damages.    With these elementary principles before us the question recurs, Is it possible for one who is instantly killed to have a cause of action for the wrong which caused his death?    The very statement of the question would seem to suggest its own answer.    Since there is not any appreciable length of time between the wrong and the death, or, in other words, the wrong and the death being coincident in point of time, the instant the wrong is committed the victim of the wrong has ceased to exist, and it seems impossible that there is any cause of action in favor of such victim.    This conclusion seems inevitable when the elements which are to be considered in determining the measure of damages are taken into account.    Those elements are physical and mental pain and suffering, expense of medical attendance, loss of time, and decreased earning capacity.    In the case of instant death every one of these elements is absent.    To presume the existence of any one of them is to presume that life did not become extinct until some appreciable time had elapsed after the wrong was committed, a fact which is negatived by the agreed statement of facts in this case.

In their brief counsel for respondents, in referring to the Act of 1905, say: "If it be assumed that this is a survival statute, giving a right of action to the heirs or personal representatives for all that the estate of the deceased lost by his death, the respondents dispute that there is no right of recovery because the death was instantaneous"—and they cite cases which they contend support this view.  The first case is *Broughel* v. *Southern N. E. Tel. Co.,* 72 Conn. 617, 45 Atl. 437, 49 L. R. A. 404, but in that case the court was considering a statute which provides: "All actions for injury to the person, whether the same do or do not instantaneously or otherwise result in death  *  *  *  shall survive to his executor or administrator."  In the opinion it is intimated that the insertion of the words "instantaneously or otherwise" did not change the meaning of the prior statute, but this is *dictum,* and whether it is or is not a proper construction of the earlier statute we need not stop to inquire.

In *Nashville etc. R. Co.* v. *Prince,* 2 Heisk. (Tenn.) 580, a peculiarly worded statute of Tennessee was considered.  The court held that the statute creates a cause of action in favor of certain heirs of the deceased for damages suffered by them on account of the death of the deceased.  If this is the correct construction of the statute, then, of course, it was wholly immaterial that the death of the deceased was instantaneous.

In *Fowlkes* v. *N. & D. R. R. Co.,* 5 Baxt. (Tenn.) 663, the same court considers the same statute that was considered in the *Prince Case* above, but, without referring to that case, apparently reaches a different conclusion as to the meaning of the statute.  The question decided is with reference to the statute of limitation, but the court seems to hold that recovery could be had under a survival statute, in case of instantaneous death.

In each of the following cases, cited by counsel for respondents, a statute patterned after, and similar to, Lord Campbell's Act was considered.  (*Roach* v. *Imperial M. Co.* (C. C.), 7 Fed. 698, 7 Saw. 224; *Price* v. *Richmond etc. R. Co.,* 33 S. C. 556, 26 Am. St. Rep. 700, 12 S. E. 413; *Reed* v. *Northeastern R. Co.,* 37 S. C. 42, 16 S. E. 289; *Brown* v. *Buffalo & S. L. R. Co.,* 22

N. Y. 191; *Whitford* v. *Panama R. Co.*, 23 N. Y. 465.)   Lord
Campbell's Act is entitled "An Act for compensating the fami-
lies of persons killed by accidents."   It is not in any sense a
survival statute, but creates a new cause of action in favor of
the kindred of the deceased.

In *Blake* v. *Midland Ry. Co.*, 18 Adol. & E., n. s., 93, the
court of queen's bench said: "Reliance was placed upon the
first section, which states in what cases the newly given action
may be maintained although death has ensued, the argument
being that the party injured, if he had recovered, would have
been entitled to a *solatium*, and therefore so shall his represent-
atives on his death.   But it will be evident that this Act does
not transfer this right of action to his representative, but gives
to the representative a totally new right of action on different
principles.   Section 2 enacts that 'in every such action the jury
may give such damages as they may think proportioned to the
injury resulting from such death to the parties respectively for
whom and for whose benefit such action shall be brought.'   The
measure of damage is not the loss or suffering of the deceased,
but the injury resulting from his death to his family."   That
this is the correct construction of the English statute is mani-
fest, and is almost universally recognized by the courts of this
country.   (*Peers* v. *Nevada P. L. & W. Co.* (C. C.), 119 Fed.
400; *Hurlbert* v. *City of Topeka* (C. C.), 34 Fed. 510; *Schwarz*
v. *Judd*, 28 Minn. 371, 10 N. W. 208; *Perkins* v. *Oxford Paper
Co.* (Me.), 71 Atl. 476; *Vicksburg etc. R. Co.* v. *Phillips,* 64
Miss. 693, 2 South. 537.)

In a dissenting opinion in *Whitford* v. *Panama R. Co.*, above,
Chief Justice Comstock construes Lord Campbell's Act as a
survival statute—a conclusion directly opposed to that reached
by the English courts, and opposed to the decided weight of
authority in this country.   He also asserts that there is not any
such thing as instantaneous death.   It is to this dissenting
opinion that our attention is particularly directed by counsel
for respondents; but we are unable to agree with either of the
conclusions reached by the learned jurist.

In *Givens* v. *Kentucky Cent. R. Co.*, 89 Ky. 231, 12 S. W. 257, a statute somewhat similar to Lord Campbell's Act, but made applicable only to railroad companies, was treated.

An action brought under a statute similar to the English statute seeks to recover damages for the death of the decedent, and, of course, in every such action it is wholly immaterial that the death was instantaneous, but decisions of courts treating cases arising under those statutes are not authority in a case arising under a survival statute.

But, speaking further of our Act of 1905, counsel for respondents say: "Nor is there any necessity for any close discrimination in the matter, since the statute in question was adopted from the state of Iowa, and has been authoritatively construed by the highest court of that state as permitting a recovery in cases of instantaneous death." Four Iowa cases are cited. The first of these is *Sherman* v. *Western Stage Co.*, 24 Iowa, 515, and in the principal opinion by Justice Cole the views of Chief Justice Comstock above, upon the subject of instantaneous death, are referred to with approval. A peculiar feature of this case is that the principal opinion is not the majority opinion upon a number of propositions; that is to say, a majority of the court dissented from Justice Cole's views. The case is not authority upon any question involved here. Furthermore, the statute therein considered (Iowa Code, sec. 4111) does not bear the slightest resemblance to our Act of 1905. It is quoted in full, and of it Justice Cole says: "This is the whole of our statute upon the subject. It was enacted by our legislature after the English statute (Stats. 9 & 10 Vict., c. 93 [Lord Campbell's Act]), and after the New York statute (Laws 1847, p. 575, and Laws 1849, p. 388) upon the same subject, and is much more concise and brief than either."

*Kellow* v. *Central Iowa Ry. Co.*, 68 Iowa, 470, 56 Am. Rep. 858, 23 N. W. 740, on rehearing 68 Iowa, 470, 56 Am. Rep. 858, 27 N. W. 466, is next cited, and in the opinion it is said: "The finding is that 'his [Carter's] death was of that nature *commonly* known as "instant death."'" A death is not necessarily instantaneous in fact because it is of that nature. If the injury

which caused the death is necessarily fatal, and death results in a few moments from it, it would no doubt be commonly called an instant death; but, as the person survived the injury for that brief period, it cannot be said that the death was instantaneous. The evidence shows that Carter survived the injury for a few moments.'' And on rehearing it is said: ''We have examined the evidence contained in the record, and are satisfied that without conflict it establishes the facts substantially as stated in the opinion. It shows beyond controversy, we think, that the death was not simultaneous with the injury. We concede that the time between the two occurrences was brief, perhaps not exceeding three to five minutes. Our holding on the question considered is based, however, not on the length of time that Carter survived the injury, but upon the fact that he lived after it occurred.''

In *Conners* v. *Burlington etc. Ry. Co.*, 71 Iowa, 490, 60 Am. Rep. 814, 32 N. W. 465, the court considered the case under sections 2525-2527 of the Iowa Code of 1873. Section 2525 is a general survival statute. Section 2526 is a general liability statute, couched in rather peculiar terms, while section 2527 again makes provision for the survival of the right of action. While this was a case of instantaneous death, the fact that it was is not dwelt upon at all; and, while recovery was permitted, it is difficult to understand whether it is upon the theory that a cause of action accrued to the deceased and survived, or whether upon the theory that the death of the deceased gave rise to a cause of action under section 2526. The statutes considered in this case have no resemblance to our Act of 1905.

The last of these Iowa cases cited is *Worden* v. *Humeston etc. R. Co.*, 72 Iowa, 201, 33 N. W. 629. In the opinion there is not any reference to any statute at all. The complaint alleged that the intestate was instantly killed, and the defendant asked for a peremptory instruction in its favor. The court says: ''The court refused to give this instruction, and the defendant assigns the refusal as error. The question here presented was raised in the case of *Conners* v. *Burlington C. R. & N. Ry. Co.*, 71 Iowa, 490, 60 Am. Rep. 814, 32 N. W. 465, and ruled adversely to the

position taken by the defendant. The court did not err, we think, in refusing the instruction.'' This is the only reference to any question involved in the case which we have now before us.

In section 1307 of the Iowa Code of 1873, we find a statute similar to our Act of 1905. This statute was in force at the time each of the last three cases above was decided, but it is not mentioned in any of them; and, so far as we can determine, every one of those cases appears to have been prosecuted under the statute mentioned in the *Conners Case,* and not under section 1307 above. Under the most favorable view, all that can be said is that the *Conners Case* seems to imply that a cause of action arises in case of instantaneous death, and that, too, probably under a survival statute, and this is followed in the *Worden Case.* The *Kellow Case* was not a case of instantaneous death, and the *Sherman Case* arose under a statute similar to Lord Campbell's Act. Reference is made in respondents' brief to the case of *Minneapolis & St. L. Ry. Co.* v. *Herrick,* 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109, for the Iowa statute similar to our law of 1905. The case does not present any question involved here. It only decides that the Iowa statute is not in conflict with the fourteenth amendment to the Constitution of the United States. The foregoing are all the cases cited by respondents in favor of their contention that this action can be maintained under our statute of 1905, even though Dillon met instantaneous death.

Having reached the conclusion that our Act of 1905 is a survival statute, it is interesting to know the definite conclusions reached by the courts in actions of this character, where death was instantaneous. We undertake to say that every survival statute presupposes that the deceased had at one time a right of action for damages occasioned by his injuries, and that he either commenced his action, and died before it went to judgment, or, having the right, he died before he exercised it.

In speaking of an action by the administrator to recover damages in a case of instantaneous death, brought under a survival statute of Massachusetts, Chief Justice Shaw said: ''In the

first case, where the casualty relied on as the cause of action and the death of the party injured were simultaneous, it seems clear that the right of action cannot survive. The case contemplated by the statute must be of such a nature that the party injured must himself have, at some time, had a cause of action. The cause of action must accrue during the lifetime of the party injured. Here there was no time, during the life of the intestate, at which a cause of action could accrue, because the life closed with the accident from which a cause of action would have otherwise accrued." (*Kearney, Admx.,* v. *Boston etc. R. Co.,* 9 Cush. (Mass.) 108.) This case has been followed uniformly by the Massachusetts court. (*Moran* v. *Hollings,* 125 Mass. 93; *Corcoran* v. *Boston & A. R. Co.,* 133 Mass. 507; *Riley* v. *Connecticut R. R. Co.,* 135 Mass. 292.)

In considering an action of this character, brought under a survival statute, the supreme court of Mississippi, in *Illinois C. R. Co.* v. *Pendergrass,* 69 Miss. 425, 12 South. 954, said: "If, as we have declared, the statute was framed to prevent the abatement of the right of personal action by the death of the injured person, then it bears its own natural construction upon its face. And if no strained or hidden meaning is to be imparted to the language of the statute, the survivorship is to personal actions which the testator or intestate might have commenced and prosecuted. But the testator or intestate could never have begun or prosecuted an action for injuries which ended in instantaneous death. To put the case in another form —the form in which the declaration presents it—can a recovery be had by the personal representative for the mental and physical pain and anguish endured by the deceased at the time of and following the injury complained of, where the death and the injury were simultaneous? The proposition is so self-contradictory and self-confuting as to be confusing. It appears unnecessary to pursue the thought. We are of the opinion that the personal representative has no right of personal action where the deceased never had such right, and that, where death was simultaneous with injury, it is impossible, to the healthy mind, to even conceive of a right of action in the man instantaneously

killed." This case is followed, and the doctrine of it approved, in *McVey* v. *Illinois C. R. Co.,* 73 Miss. 487, 19 South. 209. Under a survival statute in Kentucky the same conclusion was reached. (*Hansford's Admx.* v. *Payne & Co.,* 11 Bush (Ky.), 380.) In *Belding* v. *Black Hills etc. R. Co.,* 3 S. D. 369, 53 N. W. 750, construing a survival statute, the same conclusion is reached, and the court quotes with approval the opinion in *Kearney* v. *Boston etc. R. Co.,* above.

In order that these heirs could have prosecuted this action under the Act of 1905, which we have determined is a survival statute, it was necessary that it appear that the cause of action arose in favor of Dillon himself prior to his death; and, as his death was instantaneous, it seems to us impossible that such a cause of action could arise in his favor for the wrongful act which caused his death, and, as such cause of action did not arise prior to his death, we hold that there was not any survival of a right of action.

Other questions are propounded by counsel for appellant, as, for instance, whether the Act of 1905 is not unconstitutional if applicable to railway employees generally, as was intimated in *Stroble* v. *Chicago, M. & St. P. Ry. Co.,* 70 Iowa, 555, 59 Am. Rep. 456, 31 N. W. 63, and whether it is not necessary that willful wrongdoing shall be shown to accompany negligence or mismanagement, in order to state a cause of action under the Act of 1905. It is not necessary to determine either of these questions in this instance; but it is sufficient to say that, while the object of the Act of 1905, in principle, is praiseworthy, it is couched in such language as to make it practically meaningless, or at least to so far obscure its meaning as to make it of little or no practical use, and to say that a similar statute has been in force in another state for many years does not cure the defects in the Act, or add to its efficiency.

The judgment is reversed, and the cause is remanded to the district court, with directions to dismiss the case.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

ON MOTION FOR REHEARING.

(Submitted April 16, 1909.   Decided April 29, 1909.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

A motion for rehearing has been submitted, but the same is overruled. Upon further consideration, however, we think there is not any room for doubt that in enacting sections 5251 and 5252, Revised Codes, the legislature did not intend to create any new right of action, but merely recognized a right of action existing at common law, and sought to make that right available, notwithstanding the negligence of a fellow-servant.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.