NicholsoN, C. J.,
delivered the opinion of the Court.
This is an action of trespass, instituted in June, 1860, in the Circuit Court of Bedford County, by Nancy Prince, administratrix of Jeremiah Prince, deceased, against the Nashville and Chattanooga Railroad, to recover damages for the killing of the said Jeremiah Prince, who was the husband of said Nancy Prince. The declaration alleges that, on the — day of -, 1860, the Railroad Company did, illegally and violently, with engine, tender, passenger and freight oars, run over the said Jeremiah Prince, from which illegal and violent running over the said Jeremiah Prince died; wherefore an action hath accrued, in the name of said Nancy Prince and children, to recover of and from the Nashville and Chattanooga Railroad such damages as they may have sustained, by reason of the said Company thus depriving Jeremiah Prince of his life.
To this declaration, defendant below filed a demurrer, which was overruled. Defendant then filed two pleas: First, that Nancy Prince is not the administratrix of Jeremiah Prince; and, second, not guilty, on each of which there was issue.
Upon the trial of the cause, at the April Term, 1868, the jury rendered a verdict for the plaintiff below for $3,800, on which judgment was given, from which there was an appeal in error to this Court.
*583 From the bill of exceptions, it appears that on the 7th or 8th of April, 1860, Prince started from Shelbyville, late in the evening, in- the direction of his home, about a mile and a half from the town, near the public road. He was seen, on his way homeward, about one hundred or one hundred and fifty yards from the point on the railroad where he was killed. He was in a drunken condition. At about 8 o’clock at night, a train of cars came from Wartrace, going to Shelbyville, which run over him, nearly severing his head from his body, and otherwise greatly mangling his body. The point at which he was killed was about a mile from Shelbyville, and three-quarters of a mile from the depot. The train was running at the rate of from six to eight miles an hour. There was no head-light on the train. No whistle was sounded, or bell rung. The fireman was on the lookout at the time, but failed to discover the deceased until he was run over. In approaching the point where the deceased was run over, the train ascended a grade, and reached the summit about seventy-five yards short of the point of collision, and it was a descending grade from the summit to that point. There was a curve in the track near the summit, and a head-light would not have discovered the deceased, in consequence of the curve, until the summit was passed; and if deceased had been discovered after the summit was passed, it would have been impossible to stop the train before it reached the point of collision.
In the progress of the trial, the plaintiff in error offered to prove, by several witnesses, that Prince was a drunken, worthless man; that he provided nothing for *584 his family, and consumed what his family supplied. This evidence was objected to, and the objection sustained, and the evidence rejected. This ruling of the Court is objected to, as erroneous.
It is" to be observed, that the grounds on which the plaintiff below claimed to be compensated, as set out in her declaration, is for such damages as she and her children may have sustained by reason of defendant below having deprived of his life the husband of the plaintiff, Nancy, and the father of the children. No other claim for damages is made in the declaration.
It is manifest that this evidence was erroneously rejected, if the plaintiff below was entitled to recover for the damages which she and her children had sustained by the death of the husband and father. The Circuit Judge excluded the proof from the jury, upon the assumption that in this action such damages could not be recovered. It is obvious, that, if the plaintiff below was not entitled to recover damages for the loss of her husband, then she could recover none whatever in this suit, as she claimed none other in her declaration.
This raises the important question, whether damages sustained by a wife and children, in consequence of the killing of the husband and father, can be recovered in an action instituted under the Code, 2291. That section is as follows: “The right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act or omission of another, would have had against the wrong-doer, in case death had not ensued, shall not abate or be extinguished by his death; but shall pass to his personal representatives, for *585 tbe benefit of bis widow and nest of kin, free from tbe claims of bis creditors.”
It is not controverted that one object of this section was to prevent tbe abatement of the right of action, which a person has who has received personal injuries, from which such person afterwards dies. Nor is it material whether the person so injured had commenced his action before his death or not. In either case, this section prevents the abatement of the right of action, and transmits it to his personal representatives,- for the benefit of his widow or next of kin. Looking to the obvious purpose of the Legislature in this alteration of the common law, we are satisfied it was intended that the representative of a ¡person who had died from personal injuries, should have the right to recover damages, not only for the mental and bodily suffering, loss of time, and necessary expenses resulting immediately to the deceased from the personal injuries, but also for the damages resulting to the parties for whose benefit the right of action survives, from the death consequent upon the injuries received.
But does the section of the Code under consideration, include and provide for a case in which the injury produces instantaneous death? The answer to this question must depend upon the intention of the Legislature, as the same is to be ascertained from the language used. It will be observed that two classes of cases are provided for in the section, connected together by the use of the disjunctive conjunction, “The light of action which a person has who dies from injuries received from another.” This language describes one class of cases — those in which death results after the injuries received, but not instantaneously, *586 as we understand the language. As to the second class, “The right of action which a person, whose death is caused by the wrongful act or omission of another, would have had against the wrong-doer, in case death had not ensued, shall not be extinguished by his death.” This is the second class of cases. One class embraces rights of action which the person has who dies from injuries received; the other class, rights of action which the person “would have had whose death is caused by the wrongful act or omission of another,” etc. The distinction between the two classes of cases is by no means clear. If there is any difference, it is in this: That the language used in describing the second class, more clearly includes cases of instantaneous death than that used in describing the first class; and we infer that the language was used in the alternative, with the view of more distinctly indicating the purpose of the Legislature to include cases of instantaneous death, as well as those of death ensuing from injuries previously received. But whether the Legislature used the two different forms of expression for the purpose suggested, or not, it can not be controverted that the language, “whose death is caused by the wrongful act or omission of another,” includes cases of instantaneous death; and the language which immediately follows, “would have had against the wrong-doer, in case death had not ensued, shall not abate and be extinguished by his death,” necessarily means that the representative of the deceased person shall have a right of action, whether the deceased died after the injuries were received, or died simultaneously with the infliction of the injury which caused death; and this right of action is to be for the benefit of the widow or next of kin.
*587 It follows, that the representative of the deceased has-a right to recover damages sustained by this widow and children in consequence of his death, whether the death resulted instantaneously from the injuries or not. It would have been absurd to give, the right of action for damages for the mental and bodily sufferings of a person whose death was instantaneous. Yet a right of action is given for the benefit of the widow or next of kin. It follows, that the damage intended to be provided for, was the loss of husband or father. Such, we are satisfied, was the intention of the Legislature, and we think their intention is manifested with sufficient distinctness in the language employed.
This Court, in the case of Louisville and Nashville Railroad v. Burke, 6 Cold., 45, put a different construction on the section of the Code under consideration. But, as we can not concur in the construction placed, in that case, upon the section, as to the point under examination, we are constrained to overrule so much of the decision as relates to the particular question herein discussed.
It follows, that, in estimating the damages sustained by the defendant in error, it was legitimate for the plaintiff in error to show by proof that the deceased was a drunken and worthless man, and made no provision for his family. These were legitimate facts to be considered in estimating the damages. The rejection of such proof was erroneous. For this error, which is repeated in the charge of the Court, the judgment is reversed, and the cause remanded for another trial.
As the cause is to be re-tried, we deem it unnecessary to notice the various other questions discussed in the argument.