PEAKE, Adm'r, *v.* BALTIMORE & O. R. Co.

*(Circuit Court, S. D. Ohio. January, 1886.)*

TORTS—INJURY CAUSING DEATH AND DAMAGE TO PROPERTY—WHEN TWO SUITS MAY BE BROUGHT—RES ADJUDICATA—EXECUTORS AND ADMINISTRATORS—REV. ST. OHIO, §§ 6134, 6135.

Where there was a collision with defendant's train, by which the intestate was killed and his horses and wagon were destroyed, *held,* that a suit by the administrator, under the Revised Statutes of Ohio, §§ 6134, 6135, to recover damages for the death of the intestate, is not barred by the former recovery of the value of the horses and wagon, in another suit by the administrator.

On Demurrer.

By a collision with the defendant's train at a crossing, the intestate and his two horses were instantly killed, and his wagon was destroyed. The administrator brought two suits in the state court; one for negligently killing the intestate, and the other for negligently destroying his property. There was a judgment in the latter case for $450; afterwards a plea was filed, setting up that recovery and its satisfaction in bar of this case, and there was a reply stating the facts to which this demurrer was filed; and subsequently the cause was removed to this court.

*Converse, Booth & Keating* and *Outhwaite & Lynn,* for plaintiff.

*J. H. Collins,* for defendant.

HAMMOND, J. It was by the statute 4 Edw. III. *c.* 7, which has the force of common law with us, and through its enlarged construction by the courts, that injuries to personal property could be redressed, after the death of the owner, at the suit of the executor or administrator. See Rev. St. Ohio, § 4975. That statute almost abrogated, so far as it concerned personal property, though perhaps not quite as fully as our modern statutes have done, the maxim that personal actions die with the person; but it left the maxim in all its force as to injuries to the person until quite recent times. In this condition of the law, and prior to our own modern statutes giving a remedy after death even for injuries purely personal, there was a struggle, through the various forms of action, to redress these latter injuries, notwithstanding the obnoxious maxim, by bringing some action sounding in contract rather than tort; and, on the other hand, certain actions upon contracts, but sounding in damages,—as, for example, *assumpsit,*—were sought to be excluded from the common-law advantage of survival for all actions upon contracts. The modern abolition of forms of action has increased the complications of the subject; but everywhere traces of the influence of the nice discriminations of the old special pleadings can yet be found, and the distinctions between actions *ex contractu* and *ex delicto*, like those between law and equity, so inhere in the fiber of our law that it seems impossible to be rid of them. Schouler, Adm'r, §§ 277–284; 1 Williams, Ex'rs, (4th Amer. Ed.) 664, 669, *et seq.;* 1 Wms. Saund. 216, note; Cooley, Torts, 262; 2 Add. Torts, 1111; Broom, Leg. Max. (7th Ed.) 904–916; *Twycross* v. *Grant*, 4 C. P. Div. 40, 45; *Kirk* v. *Todd*, 21 Ch. Div. 484, 488; *Alton* v. *Midland Ry. Co.*, 19 C. B. (N. S.) 213; *Bradshaw* v. *Lancashire R. Co.*, 10 C. P. 189; *Blake* v. *Midland Ry. Co.*, 18 Adol. & E. (N. S.) 93.

There is in this case, since there is no relation of passenger to carrier or other contract between the parties, no element except of pure tort; unless, if necessity required, the principles of the old law might be invoked,—as in the case of the parson, for dilapidations, mentioned in Saunders,—to raise a contract by reason of a duty to be performed by this railroad company in so managing it that every person crossing its track should be safe from injury; this obligation or duty arising as a consideration for the franchise of operating a railroad at all. But, happily, we do not now need to resort to such niceties to save a manifest right denied by a maxim which never had any sense in it, after the law, having advanced beyond the stage which gave all a man's property to the first taker, when he was dead, allowed wills to be made and administrators to be appointed to transmit his property to the next of kin, when his debts should be paid. The early recognition of *choses in action* as property capable of transmission was nothing more than the acknowledgment of the survival of a right to sue; but this is not strictly comprehensible, for the reason that a cause of action has no life, and cannot die, as the maxim says it

does. Therefore, discarding the fictions of which the law is sometimes fond, it may be truly said that when a man dies the law takes hold of his property and vests the subsequent ownership in whomsoever it pleases, according to its wisdom. Being dead, a man can no longer be a litigant in court, and the law therefore appoints some one to act in his stead and exercise the power he had to redress his injuries, be they what they may, with such limitations as its wisdom may impose. We now have, because of rules that have become familiar, only a faint notion of the latitude that legislation may take in giving directions as to what shall be done with a dead man's property, and how the injuries—I mean in the broadest sense—he has sustained may be redressed by others appointed to redress them; these two things being in the end only one,—the distribution of his property, namely: for that compensation due him as damages for injuries sustained either to person or property, although in the hands of an adversary who denies the dead man's claim to it, is, after that controversy is settled, the amount ascertained and satisfaction made, as much tangible property distributed according to his will or according to the directions of the law in lieu of it, as any other.

Now, for a very long time,—indeed, so long that we are apt to forget that it is all by legislative direction,—pursuing the course of nature, and following the indications of human sentiment, the law has permitted the dead man to appoint the persons to take his property, and those who are to take his place as litigants and represent him in that behalf; and, in default of a will to do that, selects those nearest to him in affection as the takers, and appoints some one to represent him in litigation. Quite uniformly, everywhere, it has recognized the claim of creditors to be first paid, and, after this, that the widow and children, and then the next of kin, should take the surplus. Nearly always the executor or administrator must sue or be sued, no matter who takes the proceeds; and the law by a fiction has treated this right of the personal representative to sue as a thing transmitted by the dead man, in the sense that, by a similar fiction, he tangible property is transmitted; but we should not allow this fiction to mislead us in construing statutes like that here. It may be that if, when the decedent died, he had a right to sue, already subsisting and accrued, there was some basis for treating this as *transmitted* by him to his executor or administrator; although, as a matter of fact, as the language of the statute of Edward and all subsequent statutes shows, it is rather the creation in the representative of a new right to sue. But when—as in the case of instantaneous death, (if there be such a thing possible,) or in case of death longer delayed, where the *gravamen* of the action is the injury arising out of the death solely, and not out of the previous suffering —a suit is directed by law, which the decedent previously to his death never had any right to bring, the fiction of any transmission of the cause of action appears more distinctly, and the creation of a new

cause of action becomes more marked. Unimportant as this really is, it has a technical bearing which we cannot overlook in cases like this, as we shall presently see.

Again, when the law in recent times took another step forward, as in Edward's reign it had done, and determined that it would abolish the absurdity of offering a premium to crush a man to death rather than crush him less severely, it departed from the original policy of first satisfying creditors out of one's effects, and, as to that kind of assets or property, followed an analogous modern principle of insurance of lives, and gave the proceeds directly to the widow or next of kin, to the exclusion of creditors. Not in every state was this done, but generally. The reason of this seems plain, in view of the law as it stood under the old statute of Edward. There even purely personal injuries could be redressed, *aliunde* any contract relation of the parties, if it were made to appear that, as a direct and proximate cause of the injury, *the personal property of the decedent had been diminished;* and this, notwithstanding death ensued. The statute of Edward gave a right of action in such a case, and it was treated as an injury to the property, and not the person; transmitted to the administrator notwithstanding the death; and the assets for satisfaction of creditors and distribution to the next of kin being lessened thereby, the administrator could sue as for all other assets.

But as to that pain and suffering which does not affect one's property to diminish it, or lessen the assets in the hands of the administrator, and as to the loss of a life, in which creditors have only a remote if any interest, concerning which injuries the man could only sue if he lived, and not at all if he died, the legislature, in its wisdom, concluded that the claims of creditors were not superior, and distributed the proceeds to the widow and children or next of kin. It is true, the administrator sues, though the next of kin may, under some circumstances, also sue directly; but it is none the less the creation of a new cause of action, and not one transmitted; and this is shown by the fact that it proceeds mostly on the theory of compensating the next of kin for *their* loss, and not the decedent, by increasing his estate for administration. The creditors may take the property, but the relatives shall have the other, has been the theory of legislation. It must be admitted, however, that there is a good deal of obscurity about the legislation, and it is difficult to say whether it proceeds on the one theory or the other; for it has commingled injuries which might have been redressed under the old statute of Edward, and possibly some that might have been redressed as being a breach of a contract, even without that statute, and belonging to the general estate for administration, with those that certainly could never have found redress at all, except under the new acts which divert the proceeds from the general estate. It may be that the assets of the estate proper for the benefit of creditors have been somewhat curtailed by this process, but the right of the widow or children or next of kin has been

enlarged much more than the extent of that curtailment. The statutes themselves, particularly those of Ohio, do not make it material to inquire whether it is for the pain and suffering of the decedent, or for that of those for whom the administrator sues, for which the latter recovers; not, at least, as the question is here presented. In either case the money belongs to them, and not to the administrator *qua* administrator for the ordinary purposes of administration of assets. He is not the general trustee for the estate in the usual sense, but a special trustee for the beneficiaries designated by the new legislation, be they whom they may.

This analysis of the sources of the administrator's power to sue, and comparison of the objects sought to be secured by the legislation, old and new, authorizing him to sue, are necessary for a proper understanding and application of the doctrine of *res adjudicata,* invoked by this demurrer. There is much force in the position that when one comes to sue for damages for a particular trespass or tort of any kind, he should, in one suit, demand and show all his damage, whether to person or property; and this, whether he sues in his own behalf or that of another. If he sue for an injury to himself, this could be readily done, for the recovery belongs to him, and it would seem immaterial whether one part is for damage to property and another for damage to the person. So, too, if Lord CAMPBELL's act, and those of which it is the prototype, had, like that of Edward, merely given the administrator the right to sue, the recovery to go, like other assets, into the estate *qua* estate, it is quite difficult to see why the whole damage to both property and person should not be included in one recovery, or why any tort-feasor should be afflicted with two suits in such a case. Surely, the fact that the right to sue for injuries to property and for certain injuries to the person affecting the property injuriously, was given in Edward's reign, and that the right to sue for injuries purely personal and not affecting the property was given only in the reign of Victoria, should make no difference in that regard. Both are equally the creatures of statute; and if one were the creature of the common law and the other of a statute,—one an old and the other a newly-created cause of action,—there can be no difference in the principle which would forbid two suits for the same tort. Nor does it seem material, in such case, whether the deceased had a cause of action before he died, which has been transmitted by operation of law to his successor, or whether the latter is the first possessor of the right to sue; whether the *gravamen* of the action be the antecedent pain and suffering, or that which is caused simultaneously with death; whether death be instantaneous, if there be such a thing possible, or longer delayed,—for once abolish the fiction that the cause of action dies with the person injured, and the whole matter of redress is open at large to the legislature. It may consider whether the damages due shall go into the general assets of the estate, thereby enlarging the fund for payment of debts, and, after this, for distri-

bution according to will or the statutes of descent and distribution, or whether it shall go to others specially pointed out by the legislation. And here, again, it seems to be a somewhat unnecessary refinement to consider the question whether the legislation is based on the idea of redressing a wrong done to the deceased, or to the statutory beneficiaries,—whether it is his loss or theirs which is compensated by the recovery,—for the legislature, in either case, has the power to abrogate the old law and redress the wrong. But, reasonably, as the statutes are drawn, it would seem to be not *his* suffering, but theirs, which is the ground-work of the action; and, in tracing back the established rule, that no cause of action will lie to a third person for any injury sustained by the death of another, it will be found that it was never satisfactory to the courts, since no very sound reason was ever given for it. *Hall* v. *Steam-boat Co.*, Thomp. Carr. 205; *Nashville & C. R. Co.* v. *Prince*, 2 Heisk. 580; 2 Thomp. Neg. 1272.

But with plenary power to redress both the wrong to the deceased, and that resulting to his dependents, the legislature, perhaps without any care for the distinction, has given a broad action for redress; and the new legislation, with that which previously existed, now furnishes a complete remedy for every one. And, apart from these refinements, it is only necessary to consider that long ago the damage for injury to property, either directly, or through injury to the person which resulted in a diminution of the property, was placed by the legislature in the same category as other property, and brought within the policy of the law which determines that all property, with specific exemptions, shall be primarily a fund to pay the debts of the decedent, and only the surplus shall belong to the persons designated in the ordinary statute of descents and distributions. But as to damages purely personal, following a policy which determines that in such assets the creditors are not equitably interested, the new legislation gives the proceeds directly to persons named in the statute,—a special statute of distribution for this particular fund. Now, it is manifest that two suits are required to keep these two funds apart. If one suit were brought, there would be no way to apportion a verdict *in solido*, showing how much was for injury to property, and how much for injury purely personal; since the statute makes no provision for such apportionment, as it might have done. Perhaps it would have been more just to defendants, and more economical to all concerned, to allow one suit, and make provision to have the recovery apportioned by the jury, by the court, by the administrator, or otherwise; but the legislature has not thought so, and *ex necessitate* there must be two suits. Nominally, the parties are the same, and in a broad sense the cause of action and the issues are the same; but in a technical sense none of these conditions exist, as shown by the foregoing reference to the sources of the two suits, and their characteristics, respectively, and the case does not at all come within the familiar requirements of the principle of *res adjudicata.*

The law, in its own wisdom, and in pursuance of its own distinct policies, splits the cause of action. The administrator is the trustee of two distinct funds, for two distinct purposes, and, technically, sues in two distinct capacities, as much as if he represented two decedents, or as if the legislature had appointed some other agent to bring the personal injury suit rather than himself. This is plainer under the Ohio statute, as amended, than some others, perhaps, and plainer in this case than it might be in some others, where the alleged injury to the property or general assets was not so direct and patent as it is here. Rev. St. Ohio, 6135; 77 Laws Ohio, p. 207, (Act April 30, 1880;) *Steel* v. *Kurtz,* 28 Ohio St. 191.

Cases elsewhere support this judgment. In England it has been held, not only that an administrator may bring two suits, as here suggested he must, but also that one who has been injured both in property and person may, even while living, bring two suits, but not without substantial protest in the latter case. *Leggott* v. *Great Northern R. Co.,* 1 Q. B. Div. 599; *Brunsden* v. *Humphrey,* 10 App. Cas.——; S. C. 24 Amer. Law Reg. (N. S.) 369, and note; S. C. 11 Q. B. Div. 712; *Bradshaw* v. *Lancashire & Y. Ry., supra; Blake* v. *Midland R. Co., supra;* S. C. 83 E. C. L. 93; *Needham* v. *Grand Trunk R. Co.,* 38 Vt. 294.

The first of these cases is directly in point, only the case at bar is more plainly within its ruling, and it is the only case disclosed by the diligence of counsel or my own which is so; but the others sustain the reasoning of that case, and I have endeavored to show the soundness of the judgment; and that, whatever may be said of bringing, while one is living, two suits for the same tort to person and property, there can be no objection, under existing statutes, to two suits by his administrator; indeed, there must essentially be two suits for the reasons I have stated, if for no other.

Demurrer overruled.