CAROLINA, C. & O. RAILROAD *v.* SHEWALTER.

(*Knoxville.* September Term, 1913.)

1. APPEAL AND ERROR. Review. Reduction of verdict.

The reduction of the verdict in an action for death, being upheld by the court of civil appeals, will not be interfered with by the supreme court. (*Post, p.* 365.)

Act cited and construed: Laws 1891, ch. 124; Revised Statutes, 1903, ch. 89.

Cases cited and approved: Fulgham v. Midland Valley Railroad Co. (C. C.), 167 Fed., 660; Walsh v. N. Y., etc., R. R. Co. (C. C.), 173 Fed., 494; Davidson-Benedict Co. v. Severson, 109 Tenn., 572; Mondous v. N. Y., N. H. & H. R. R. Co., 223 U. S., 1, 32 Sup. Ct., 169; Baker v. Bolton, 1st Camp., 493; Osborne v. Gillette, L. R. A. Exch., 88; Railroad v. Burk, Admx., 46 Tenn., 45, 52; Fowlkes v. Railroad, 64 Tenn., 663; Haley v. Railroad, 66 Tenn., 239; Railroad v. Daughtry, 88 Tenn., 721; Murphy v. New York & N. H. R. Co., 30 Conn., 184; Broughel v. Sou. New Eng. Telephone Co., 72 Conn., 617; Conners v. Burlington C. R. & N. Y. Ry. Co., 71 Iowa, 490; Worden v. Humeston & S. R. Co., 72 Iowa, 201; Dillon v. Great Northern R. Co., 38 Mont., 485; Van Amburg v. Vicksburg & P. R. Co., 37 La. Ann., 651; Hamilton v. Morgan's L. & T. R. & S. S. Co., 42 La. Ann., 824; The Corsair, 145 U. S., 335, 12 Sup. Ct., 949; Kearney v. B. & W. R. Co., 9 Cush. (Mass.), 108; Hollenbeck v. Berkshire R. Co., 9 Cush. (Mass.), 478; Kennedy v. Standard Sugar & Refinery, 125 Mass., 90; Moran v. Hollings, 125 Mass., 93; Mulchahey v. Washburn Car Wheel Co., 145 Mass., 281; St. Louis, I. M. & S. Ry. Co. v. Dawson, 68 Ark., 1; St. Louis, I. M. & S. Ry. Co. v. Stamps, 84 Ark., 241; I. C. R. Co. v. Pendergrass, 69 Miss., 425; Vicksburg, etc., R. Co. v. Phillips, 64 Miss., 693; Dillon v. Great Northern R. Co., 38 Mont., 485; Belding v. Black Hills R. Co., etc., 3 S. D., 369; Hansford v. Payne, 11 Bush. (Ky.), 380; Newport News, etc., R. Co. v. Dentzel, 91 Ky., 42; Givens v. Ky. Central R. Co., 89 Ky., 231; Sweetland v. Chg., etc., R.

Co., 117 Mich., 444; Kyes v. Valley Telephone Co., 132 Mich., 281; Oliver v. Houghton County Street Ry. Co., 134 Mich., 367; Brown v. Chg. & N. W. Ry. Co., 102 Wis., 137; Lehmann v. Folwell, 95 Wis., 185; Holton v. Daly, 106 Ill., 131; Chg. & E. I. R. Co. v. O'Connor, 119 Ill., 586; McCarthy v. Chg. R. I. & P. R. Co., 18 Kan., 46; Lubrano v. Atlantic Mills, 19 R. I., 129; L. & N. R. Co. v. McElwaine, 98 Ky., 700.

2. **DEATH.** Cause of action. Statutes. Interstate commerce employee.

Act April 22, 1908, known as the Employers' Liability Act, ch. 149, sec. 1, 35 Stat., 65 (U. S. Comp. St. Supp., 1911, p. 1322), declares a carrier by railroad liable in damages to a "person suffering injury" while employed by it in interstate commerce, or, in case of his death, to his personal representative, for the benefit of certain relatives. Section 9, added to such chapter by Act April 5, 1910, ch. 143, sec. 2, 36 Stat., 291 (U. S. Comp. St. Sup., 1911, p. 1325), provides that any right of action given by this act to a "person suffering injury" shall survive to his representative. *Held*, that section 9 creates no new cause of action, but merely preserves, by survival, the cause of action given the employee, and therefore has no application where there is an instantaneous killing, right of action for the killing in such case being given the personal representative. (*Post, p.* 367.)

Cases cited and approved: Fulgham v. Midland Valley R. R. Co. (C. C.), 167 Fed., 660; Walsh v. New York, etc., R. R. Co. (C. C.), 173 Fed., 494; U. S. v. Goldenberg, 168 U. S., 95.

3. **DEATH.** Action for benefit of relatives.

To authorize recovery for the benefit of the father of an adult son instantly killed while employed by a railroad in interstate commerce, under Act April 22, 1908, ch. 149, sec. 1, 35 Stat., 65 (U. S. Comp. St. Supp., 1911, p. 1322), merely declaring the company liable in damages, it must be shown the father had reasonable expectation of pecuniary assistance or support from deceased. (*Post, p.* 392.)

Carolina v. Shewalter.

Cases cited and approved: Michigan Central R. Co. v. Vreeland, 227 U. S., 59; American R. Co. v. Didrickson, 227 U. S., 145; Hutchins v. St. Paul M. & M. Ry. Co., 44 Minn., 5.

## FROM SULLIVAN.

Appeal from Law Court, Sullivan County.—E. K. BACHMAN, Special Judge.

PHLEGAR, POWELL, PRICE & SHELTON, for appellant.

HARR & BURROW, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by W. N. Shewalter, the father and administrator of Robert Shewalter, deceased, to recover damages for the death of the latter, a railroad fireman, who was killed in an accident on the line of defendant company while in its employ.

There was a verdict below for $15,000, remittitur of $5,000 directed, and judgment entered for $10,000. This judgment was affirmed by the court of civil appeals. The case is before us on *certiorari,* both parties petitioning. The administrator complains of the reduction of the verdict. We will not interfere in a matter of this sort, where the court of civil appeals has upheld the trial judge. We overrule all assignments of error on behalf of the railway company, ex-

cept those raising the question of the measure of damages under the act of congress known as the Employers' Liability Act, which we will now consider.

The suit was founded on the act of congress, known as the Employers' Liability Act (Act April 22, 1908, ch. 149, 35 Stat., 65 [U. S. Comp. St. Supp., 1911, p. 1322], and the amendment of April 5, 1910, ch. 143, sec. 2, 36 Stat., 291 (U. S. Comp. St. Supp., 1911, p. 1325).

The particular provisions of the act drawn in question upon this appeal are the following sections:

Section 1: "That every common carrier by railroad while engaged in commerce between any of the several States or territories, or between any of the States and territories, or betwen the District of Columbia and any of the States or territories, or between the District of Columbia or any of the States or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its care, engines, ap-

pliances, machinery, track, roadbed, works, boats, wharves or other equipment.''

Section 9: ''That any right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury.''

Section 9 was an amendment to the original act. It will be observed that by the provisions of section 1 heretofore two rights of action are given; the first to the injured employee, and the second, in case of death to his or her personal representative, for the benefit, etc.

In two cases arising in the circuit courts of the United States it was held that the first right of action, that given to the employee, would not survive to his personal representative in case of his death. *Fulgham* v. *Midland Valley Railroad Co.* (C. C.), 167 Fed., 660; *Walsh* v. *N. Y., etc., R. R. Co.* (C. C.), 173 Fed., 494.

As appears from the reports of the judiciary committees of the house and senate, the amendment was enacted to meet the effect of these two decisions, and to cause the survival of the original right of action given to the employee for injuries to his personal representative.

It is conceded upon this record that the death of Robert Shewalter was instantaneous, or practically so.

He was killed by the collision of the engine, upon which he was fireman, with a large boulder that had fallen from the mountain side, along which the train ran to the track below. The engine overturned, and probably rolled over him. The witnesses say he was killed outright.

In his charge to the jury, the circuit judge instructed them as follows:

"The statute of the United States, known as the Employers' Liability Act, under which this suit is brought, provides that 'the right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow, husband, or children of such employee; and if none, then to such employee's parents.' This means that all the rights the employee would have had for the injury received will, in the case of his death, go to his personal representative, for the benefit of his widow and children, if there be any; and if none, then for the benefit of his parents. In this case, if you shall find that plaintiff is entitled to recover, the elements of damage that would have survived to Robert Shewalter, had death not resulted from his injuries, will survive for the benefit of his father, he having left no widow, child, or mother. I, therefore, instruct you that, in an action for personal injuries, the plaintiff is entitled to recover compensation, so far as it is susceptible of an estimate in money, for the loss and damage caused to him by defendant's negligence, and a reasonable sum for the pain and suffering, if any be

shown, and also a fair recompense for the loss of what he would have otherwise earned at his trade or profession, and has been deprived of the capacity of earning, by the wrongful act of the defendant, if such be shown. And this will be the measure of damages in this case, if you shall find for the plaintiff. In other words, the pecuniary value of the life of the deceased, Robert Shewalter, is to be determined, if you find for the plaintiff, upon a consideration of his expectancy of life, his age, condition of health and strength, capacity for labor, and for earning money through, skill in any trade, occupation, or business, and his personal habits as to sobriety and industry, all modified, however, by the fact that the expectation of life is at most only a probability based upon experience, and also by the fact that the earnings of the same individual are not always uniform. All of these elements are to be taken into consideration by the jury, and, after weighing them all, they should assess such amount of damages as may be sufficient to compensate for the loss of the life whose value they are attempting to estimate.''

The point of the criticism directed at this excerpt from the charge is that it permits the jury to assess damages in this suit not only for the loss sustained by the plaintiff, the beneficiary of the suit, but also the actual damages inflicted upon the person and the estate of the deceased—the pecuniary value of the life of deceased.

It is insisted that, inasmuch as the death of the deceased was instantaneous, he sustained no damage him-

128 Tenn. 24

self, and no cause of action accrued to him which might survive; that plaintiff's only right of action here is under those provisions of the act which provide a cause of action for certain beneficiaries in case of death of the party injured; and that the only damages to which the plaintiff is entitled are those actually sustained by him.

The charge of the circuit judge was correct, under the statutes of Tennessee, and is in accord with the law as laid down in *Davidson-Benedict Co. v. Severson,* 109 Tenn., 572, 72 S. W., 967, and cases there reviewed.

This suit, however, is not brought under the statutes of this State, but is founded on the act of congress, and this act of congress, in the field which it covers, has been expressly held by the supreme court, *Mondou v. N. Y., N. H. & H. R. R. Co.,* 223 U. S., 1, 32 Sup. Ct., 69, 56 L. Ed., 327, 38 L. R. A. (N. S.), 44, to supersede all State legislation, and to cover and control all matters arising thereunder.

It therefore becomes necessary to examine the federal statute and determine the measure of damages properly allowable under it in a suit like this.

Owing to the peculiar language of our acts relating to this subject, our decisions construing these acts unfortunately will be of little benefit to us in this investigation.

At the common law, as is well known, the right of action for damages for personal injuries perished with the death of the injured person. Such right did not survive in favor of anyone.

Another rule of the common law was that the death of a human being was not a matter that could be complained of as an injury by anyone, and no one was entitled to maintain an action for damages for the mere loss of life of another. Pollock Torts, 54; *Baker* v. *Bolton,* 1st Camp., 493; *Osborne* v. *Gillette,* L. R. A. Exch., 88.

The Parliament of Great Britain, and the legislatures of nearly all the State of this Union have passed acts to obviate and repeal these harsh common law rules. Some of these acts repeal the first rule, and provide that a decedent's cause of action against a wrongdoer shall survive. These are often called "survival acts." Other acts give substantially a new cause of action to certain relatives or persons dependent upon deceased for the loss they sustained by reason of the death. These acts are frequently spoken of as "death acts."

Quite often it appears that the States have passed both survival and death acts and they are sometimes contained in the same general statute. Such seems to have been the course taken by congress in the act here under consideration, after it was amended. The act provides for the survival of the original cause of action, and also provides a new action for death of the injured person in favor of certain designated beneficiaries.

As has been said before, the statutes of Tennessee upon this subject are unique, and this court has been at much pains to explain these statutes and lay down

rules for their interpretation. See review of our cases in *Davidson Benedict Co.* v. *Severson,* 109 Tenn., 572, 72 S. W., 967.

Tennessee statutes as contained in Shannon's Code are as follows:

"Sec. 4025. The right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act or omission, or killing of another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children or to his personal representative, for the benefit of his widow or next of kin, free from the claims of creditors."

Sections 4026, 4029, 4466, and 4469 contain other provisions with reference to such suits which are not material to this discussion. Under section 4025, it was formerly held by this court that damages were not recoverable where the killing was instantaneous. The court said:

"The killing of a man is not, of itself, a cause of civil action. Damages recoverable are for what was incurred or suffered while the person lived. If the killing be absolutely instantaneous, damages are not recoverable, for that would be giving damages for the mere act of killing." *Railroad* v. *Burk, Adm'x,* 6 Cold., 45, 52.

This holding of the court was afterwards overruled in *Railroad* v. *Prince,* 2 Heisk., 585, in which case, construing the statute, this court said:

"But does the section of the Code under consideration include and provide for a case in which the injury produced instantaneous death? The answer to this question must depend upon the intention of the legislature, as the same is to be ascertained from the language used. It will be observed that two classes of cases are provided for in the section connected together by the use of the disjunctive conjunction, 'the right of action which a person *has* who dies from injuries received from another.' This language describes one class of cases—those in which death results after the injuries received, but not instantaneously, as we understand the language. As to the second class, 'the right of action which a person, whose death is caused by the wrongful act or omission of another, *would have had* against the wrongdoer, in case death had not ensued, shall not be extinguished by his death.' This is the second class of cases. One class embraces right of action which the person *has* who dies from injury received; the other class rights of action which the person '*would have had* whose death is caused by the wrongful act or omission of another,' etc. The distinction between the two classes of cases is by no means clear. If there is any difference, it is this: That the language used in describing the second class more clearly includes cases of instantaneous death than that used in describing the first class; and we infer that the language was used in the alternative, with the view of more distinctly indicating the purpose of the legislature to include cases of instantaneous

death, as well as those of death ensuing from injuries previously received. But whether the legislature used the two different forms of expression for the purpose suggested or not, it cannot be controverted that the language, 'whose death is caused by the wrongful act or omission of another,' includes cases of instantaneous death; and language which immediately follows, '*would have had* against the wrongdoer, in case death had not ensued, shall not abate and be extinguished by his death,' necessarily means that the representative of the deceased person shall have a right of action, whether the deceased died after the injuries were received, or died simultaneously with the infliction of the injury which caused death; and this right of action is to be for the benefit of the widow or next of kin.''

After some further discussion, the court overruled the case of *Railroad* v. *Burk,* supra, in so far as that case construed the act to contain no provision for recovery of damages in cases of instantaneous death.

*Railroad* v. *Prince,* supra, has been followed in *Fowlkes* v. *Railroad,* 5 Baxt., 663; *Haley* v. *Railroad,* 7 Baxt., 239; and *Railroad* v. *Daughtry,* 88 Tenn.; 721, 13 S. W., 698, and other cases. It has been conceded since the decision in *Railroad* v. *Prince* that our statute covered cases where the killing was instantaneous, by reason of the peculiar provisions of this statute pointed out in that case.

The Connecticut statute of chapter 193 of the Public Acts of 1903, provides:

Carolina v. Shewalter.

"In all actions surviving to or brought by an executor or administrator for injuries resulting in death, *whether instantaneous or otherwise,* such executor or administrator may recover from the party legally in fault for such injuries, just damages not exceeding $10,000."

Prior to the passage of the above-mentioned act, 1903, the statute of Connecticut provided that "actions for injury to the person, whether the same do or do not result in death . . . shall survive."

The Connecticut court has been at pains to explain and point out the difference between the statutes of that State and those of other States to which we shall hereafter refer. *Murphy* v. *New York & N. H. R. Co.,* 30 Conn., 184; *Broughel* v. *Sou. New Eng. Telephone Co.,* 72 Conn., 617, 45 Atl., 435, 49 L. R. A., 404.

The Iowa statute contains some peculiar clauses, and the decisions construing the same do not appear to be in harmony. In so far as a recovery has been permitted under a survival statute in cases of instantaneous killing, such recovery seems to have been justified by reason of an old statute of that State which provided: "When a wrongful act produces death, the perpetrator is civilly liable for the injury." See *Conners* v. *Burlington C. R. & N. Y. Ry. Co.,* 71 Iowa, 490, 32 N. W., 465, 60 Am. Rep., 814; *Worden* v. *Humeston & S. R. Co.,* 72 Iowa, 201, 33 N. W., 629. See, also, Tiffany's Death by Wrongful Act (2 Ed.), sec. 75. For

a critical review of the Iowa cases, see *Dillon* v. *Great Northern R. Co.*, 38 Mont., 485, 100 Pac., 960.

In Louisiana, likewise, the decisions construing the survival act of that State seem to be somewhat out of harmony. In so far as these decisions authorize recovery of damages for instantaneous killings, they seem to rest upon the provisions of a statute which enacts that, "every act whatever that causes damage to another obliges him by whose fault it happens to repair it. The right of this action shall survive, in case of death in favor of the minor children or widow of the deceased," etc. See *Van Amburg* v. *Vicksburg & P. R. Co.*, 37 La. Ann., 651, 55 Am. Rep., 517, and *Hamilton* v. *Morgan's L. & T. R. & S. S. Co.*, 42 La. Ann., 824, 8 South., 586.

It will be observed in this connection that the supreme court of the United States, construing the Louisiana statute, held that, where a vessel met with an accident, and sank ten minutes later, drowning libelant's daughter, no action for her suffering and fright during such ten minutes, separate and apart from the cause of action arising out of her subsequent death, could be maintained. *The Corsair*, 145 U. S., 335, 12 Sup. Ct., 949, 36 L. Ed., 727.

The four States mentioned, Tennessee, Connecticut, Iowa, and Louisiana, are the only four, so far as we know, where damages have ever been allowed to be recovered under survival statutes, where death was instantaneous. In Tennessee and Connecticut, it is manifest from what we have said that this result was

reached owing to the peculiar statutory provisions in those States. As we understand their decisions, no uniform result has been attained in Louisiana or Iowa. To the extent, however, that survival statutes in those States have been held to justify recovery in cases of instantaneous killings, the decisions appear to be rested likewise on peculiar phraseology of statutes in force.

.Reverting now to the act of Congress under consideration there does not appear to be any ambiguity in the language of the act of 1908 or the amendment of 1910.

The original act provided that carriers should be liable in damages to "any person suffering injury," and the amendment provided that this right of action given "to a person suffering injury" should survive. There seems to be small room for construction here. The provisions of this amendment of 1910, or survival act, as we may call it, are little different -from the provisions of survival statutes in several of the States to which we shall now refer.

There are a number of statutes in Massachusetts, but the original act, which has been frequently construed by the courts of that State, provides that "the action for trespass on the case for damages to the person shall hereafter survive so that in the event of the death of the person entitled to bring such action, it may be prosecuted or defended by or against the executor or administrator in the same manner as if he were living." And construing this statute, the Massachu-

setts court, speaking through Chief Justice Shaw, said:

"The statutes suppose the party deceased to have been once entitled to bring an action for damages for the injury, and either to have commenced the action and subsequently died, or being entitled to bring it, to have died before exercising that right. The question is whether the provision cited applies to the case before us. In the first case, where the casualty relied on as the cause of action, and the death of the party injured was simultaneous, it seems clear that the right of action cannot survive. The case contemplated by the statute must be of such a nature that the party injured must himself have . . . had a cause of action. The cause of action must accrue during the lifetime of the party injured. Here there was no time, during the life of the intestate, at which a cause of action could accrue, because the life closed with the accident, from which a cause of action would have otherwise accrued." *Kearney* v. *B. & W. R. Co.,* 9 Cush. (Mass.), 108.

In a similar case, the same learned judge observed:

"The question, in deciding whether any case is within the statute, is whether the sufferer survived, that is, lived after the act was done, which constitutes the cause of action. Life or death, that is the test. If the death, was instantaneous, and, of course, simultaneous with the injury, no right of action accrues to the person killed, and, of course, none to which the statute can apply. But if the party survives, lives after it, the right of action accrues to him, as a person *in esse,* and his subsequent death does not defeat it, but, by operation of the statute, vests in it, the personal

representative.'' *Hollenbeck* v. *Berkshire R. Co.,* 9 Cush. (Mass.), 478.

The rule laid down in these cases is reaffirmed by the Massachusetts court in the following cases: *Kennedy* v. *Standard Sugar & Refinery,* 125 Mass., 90, 28 Am. Rep., 214; *Moran* v. *Hollings,* 125 Mass., 93; *Mulchahey* v. *Washburn Car Wheel Co.,* 145 Mass., 281, 14 N. E., 106, 1 Am. St. Rep., 458.

Under the constitution of Arkansas, art. 5, sec. 31, and by its statutes (Kirby's Digest, secs. 6285-6290), provision is made for the survival of causes of action for injuries resulting in death without peculiar phraseology.

The Arkansas court has held, in a suit for damages for the death of a child, that ''the survival of the action depends upon whether the injured child lived after the act constituting the cause of action.'' *St. Louis, I. M. & S. Ry. Co.* v. *Dawson,* 68 Ark. 1, 56 S. W., 46; *St. Louis, I. M. & S. Ry. Co.* v. *Stamps,* 84 Ark., 241, 104 S. W. 1114.

The Mississippi Code of 1906, sec. 721, as amended by chapter 167 of the Laws of 1908, now provides: ''The fact that death is instantaneous shall in no case affect the right of recovery.'' Prior to this amendment, a simple survival statute existed in Mississippi, and construing this statute, the supreme court of that State said:

''The evil of the common law was that all personal actions died with the person. The remedy of the statute is to cause the action or the right of action to sur-

vive to the personal representative. Whatever suit was maintainable by the deceased shall be held maintainable by the personal representatives of the deceased. But the deceased never had any personal action which could abate at common law, where the injury causing death and the death itself was simultaneous. It is impossible to conceive, at common law, of a right of action to be begun . . . by one who died instantaneously on being injured. If, as we have declared, the statute was framed to prevent the abatement of the right of personal action by the death of the injured person, then it bears its own natural construction upon its own face. And if no strained or hidden meaning is to be imparted to the language of the statute, the survivorship is to personal actions which the testator or intestate might have commenced and prosecuted. But the testator or intestate could never have begun or prosecuted an action for injuries which ended in instantaneous death." *I. C. R. Co.* v. *Pendergrass,* 69 Miss., 425, 12 South., 954; *Vicksburg, etc., R. Co.* v. *Phillips,* 64 Miss., 693, 2 South., 537.

In Montana there was some discussion as to whether their statute was a survival statute. The court held that it was, and, after an exhaustive review of the authorities, concluded, referring to deceased: "As his death was instantaneous, it seems it was impossible that such a cause of action could arise in his favor for the wrongful act which caused his death, and, as such cause of action did not arise prior to his death, we hold that there was not any survival of a right of

action.'' *Dillon* v. *Great Northern R. Co.*, 38 Mont., 485, 100 Pac., 960.

The South Dakota statute provides that, if the life of any person shall be lost, ''the personal representatives may institute suit and recover damages in the same manner that the person might have done for any injury where death did not ensue.'' Section 5498, Comp. Laws 1887. The court held that this was a survival statute, and, when death was instantaneous with the accident, no right of action accrued to deceased, because his life closed with the accident, and none could therefore accrue to his personal representative. *Belding* v. *Black Hills R. Co., etc.*, 3 S. D., 369, 53 N. W., 750.

Under the Kentucky General Statutes 1873, ch. 10, providing for any person injured, with certain exceptions, an action might be brought or revived by the personal representative in the same manner as a cause of action founded on contract, it was held that there must be an appreciable interval between the infliction of injury and the death, and that no recovery could be had where the death was practically instantaneous or immediate. *Hansford* v. *Payne*, 11 Bush. (Ky.), 380; *Newport News, etc., R. Co.* v. *Dentzel*, 91 Ky., 42, 14 S. W., 958.

We do not understand that *Hansford* v. *Payne* has been overruled by the later case of *Givens* v. *Ky. Central R. Co.*, 89 Ky., 231, 12 S. W., 257. The suit in the later case was based upon a different statute.

·In Michigan both a survival statute and a death statute exist. It has been frequently held there that, if death is instantaneous, the administrator can recover damages under the death statute alone, and that, if death is not instantaneous, he can recover only under the survival statute. *Sweetland* v. *Chg., etc., R. Co.,* 117 Mich., 329, 75 N. W., 1066, 43 L. R. A., 568; *Dolson* v. *Lakeshore, etc., R. Co.,* 128 Mich., 444, 87 N. W., 629; *Kyes* v. *Valley Telephone Co.,* 132 Mich., 281, 93 N. W., 623; *Oliver* v. *Houghton County Street Ry. Co.,* 134 Mich., 367, 96 N. W., 434, 104 Am. St. Rep., 607, 3 Ann. Cas., 53.

In Maine it was formerly provided that any railroad corporation, by whose negligence the life of any person in the exercise of due care was lost, should forfeit not more than $5,000, nor less than $500, to be recovered by indictment to the use of persons specified, the remedy by indictment being applicable to only a small class of persons. An indictment could be maintained only in cases of instantaneous death. In other cases, an action was maintainable for the recovery of such damages as the party injured might have recovered had he lived under the survival act, now Revised Statutes 1903, ch. 89, sec. 8. In 1891 the legislature passed a death act (Laws 1891, ch. 124, Revised Statutes 1903, ch. 89, secs. 9, 10) substantially on the lines of Lord Campbell's Act, which, by implication, repealed the remedy by indictment. The construction given to the statute providing a remedy by indictment was adhered to, however, in so far that it

is held that the death act is limited to cases where the person injured died immediately, upon the ground that the legislature must have intended by this act to extend the means of redress to a class of cases where none existed before, and not to begin two actions for a single injury, one for the benefit of the decedent's estate, and another for the benefit of the widow and children, or next of kin. Tiffany's Death by Wrongful Act (2 Ed.), sec. 43, and cases there cited.

In Wisconsin, which has both a death act and a survival act, the precise question here under consideration does not seem to have arisen, but the Wisconsin court has held that the length of time a decedent survives after the injury is material in estimating the damages recoverable. *Brown* v. *Chg. & N. W., Ry. Co.*, 102 Wis., 137, 77 N. W., 748, 78 N. W., 771, 44 L. R. A., 579; *Lehmann* v. *Folwell*, 95 Wis., 185, 70 N. W., 170, 37 L. R. A., 333, 60 Am. St. Rep., 111.

In some of the States it is held there can be no recovery under a survival statute at all, except in cases where death results from some cause other than the injury. It is said in those States that the death statutes are intended to cover every case where death results from the injury, whether immediate or otherwise. *Holton* v. *Daly*, 106 Ill., 131; *Chg. & E. I. R. Co.* v. *O'Connor*, 119 Ill., 586, 9 N. E., 263; *McCarthy* v. *Chg. R. I. & P. R. Co.*, 18 Kan., 46, 26 Am. Rep., 742; *Lubrano* v. *Atlantic Mills*, 19 R. I., 129, 32 Atl., 205, 34 L. R. A., 797. Also see *L. & N. R. Co.* v. *McElwaine*,

98 Ky., 700, 34 S. W., 236, 34 L. R. A., 788, 56 Am. St. Rep., 385.

From the foregoing review of the cases, it may be taken as well-settled law that no right of action passes to the personal representatives of a deceased person where the killing was instantaneous, under statutes which provide simply in general terms for a survival of causes of action for personal injury. Statutes which have been construed to the contrary, as we have seen, contained some language peculiar to themselves, and are not plain and direct in their terms as is the amendatory act of congress here under consideration.

The act of 1908 conferred a right of action upon employees suffering injury, and the amendment simply provided that this right of action should survive. The amendment undertook to deal with causes of action which had accrued, and which otherwise would have been lost by the death of the employee. The amendment was passed to meet the effect of the decisions in *Fulgham* v. *Midland Valley R. R. Co.* (C. C.), 167 Fed., 660, and *Walsh* v. *New York, etc., R. R. Co.* (C. C.), 173 Fed., 494. It was not the intention of congress by this amendment to create a new cause of action, but only to preserve one heretofore conferred upon the employees by the act of 1908. The act of 1908 cannot be construed as having conferred upon an employee or his estate an action for recovery of damages, where his death was instantaneous. In such cases, the right of action was conferred upon designated beneficiaries.

Only the quick can be described as *suffering*. The dead may have *suffered,* but are not *suffering.* When injury and death of an employee are simultaneous, there occurs no period in which he may be said to be *suffering,* no span of life in which this right of action may accrue. Never having existed, such right of course cannot survive.

It is insisted, however, that the reports of the judiciary committees of the house and senate indicate that the purpose of the amendment of 1910 was to make the remedy of the employee as broad and comprehensive as the remedy afforded to him and his estate in any of the States. Such language is found in these reports.

We must, however, look primarily to the language used by the lawmakers in the statute enacted. If the language there used is plain, and there is no cause for construction or interpretation, we are not justified in drawing upon extraneous sources for the meaning of the statute. The supreme court of the United States has said this:

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. It is true there are cases in which the letter of the statute is not deemed controlling, but the

128 Tenn. 25

cases are few and exceptional, and only arise where there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute." *U. S.* v. *Goldenberg,* 168 U. S., 95, 18 Sup. Ct., 3, 42 L. Ed., 394. See, also, Lewis Sutherland Statutory Construction, sec. 366.

As said before, the language of the act of 1908 and the amendment of 1910 seems plain and simple. We cannot supply the omission of congress, nor cure a failure to adopt all the unusual remedies and measures of damage obtaining in different States, by interpolations into this act or construction broader than the language used would warrant.

As we have observed, the amendment of 1910 deals with an action that has accrued. No action accrues to an employee where his death is instantaneous, and consequently no action survives. The remedy in such cases is conferred by that portion of the original act patterned after Lord Campbell's Act, which provides for recovery in case of death in favor of certain designated beneficiaries.

The case under consideration is not covered by the amendment, and must therefore be disposed of as a suit based on the act of 1908, brought on behalf of beneficiaries named to recover damages for the employe's death.

Carolina v. Shewalter.

This portion of the act of 1908 has been considered and construed by the supreme court in the late cases of *Michigan Central R. Co.* v. *Vreeland,* 227 U. S., 59, 33 Sup. Ct., 192, 57 L. Ed., 417, decided January 20, 1913, and *American R. Co.* v. *Didrickson,* 227 U. S., 145, 33 Sup. Ct., 224, 57 L. Ed., 456, decided January 27, 1913.

The court said that the act of congress, in giving an action for the benefit of certain members of the family of the decedent, was essentially identical with the act known as Lord Campbell's Act, chapter 93, 9 and 10, Victoria. Acts fashioned after Lord Campbell's Act have been passed in many States of the Union, and the rules for ascertaining and fixing damages recoverable thereunder are well settled.

Mr. Tiffany collates the statutes in his work on Death by Wrongful Act, sec. 129, *et seq.* He says:

"The distinguishing feature of Lord Campbell's Act and of acts similar to it in respect to damages is that the damages to be recovered are solely such as result (1) from the death (2) to the persons for whose benefit the action is given. This feature is common to all the acts in force in the United States with the following exceptions:

"I. The acts of Iowa, Kentucky, Oregon, and Rhode Island, as construed by the courts, provide that the damages except in actions by parents shall be such as result from the death to the estate.

"II. The acts of North Carolina, Virginia, and West Virginia, as construed by the courts, provide for a re-

covery notwithstanding there may be in existence no one of the relatives for whose benefit the action is primarily given.

"III. The acts of Louisiana, Mississippi, and Tennessee provide, in effect, for the recovery both of such damages as result to the party injured from the injury, and to the beneficiaries from the death.

"IV. The act of Georgia provides that the measure of damages shall be the full value of the life without deduction for the expenses of deceased had he lived.

"V. The acts of Massachusetts provide for a forfeiture in certain cases to be recovered by indictment. A civil action may also be maintained, under certain circumstances, in which the damages are assessed with reference to the degree of culpability of the defendant." Id., sec. 129.

The act of congress contains none of the exceptional provisions found in the statutes of some of the States noted above, but as said by the Supreme Court:

"First, it is grounded upon the original wrongful injury of the person; second, it is for the exclusive benefit of certain specified relatives; third, the damages are such as follow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injury. The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived.

Compensation for such loss manifestly does not include damages by way of recompense for grief or wounded feelings." *Michigan Central R. Co.* v. *Vreeland,* supra.

The court again says:

"The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, 'according as the action is brought for the benefit of husband, wife, minor child or parent of minor child for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled.' " Tiffany's Death by Wrongful Act (2 Ed.), secs. 158, 160-2.

The deceased, Robert Shewalter, was an adult about twenty-five years of age. He did not live with his father at the time of his death, nor did he contribute anything to the support of his father, so far as the record shows. An effort was made by counsel for the railroad company below to ascertain from a brother of deceased while on the stand what contributions deceased had made to his father's support, with a view of putting this in evidence to mitigate the recovery. Objection, however, was taken to this evidence by counsel for plaintiff below, and it was excluded. So there is no evidence in the record that the father of deceased had been in the habit of receiving pecuniary assistance or support from deceased. The deceased was, of course, under no legal liability to the bene-

ficiary, and the beneficiary has wholly failed to show
that he has lost any prospective pecuniary benefit by
reason of the death of his son.

In *Michigan Central Railroad Co.* v. *Vreeland,* su-
pra, the supreme court expressly approves the rule for
the measurement of damages laid down by Mr. Tiffany
in his Death by Wrongful Act. In discussing the meas-
ure of damages to which a beneficiary is entitled un-
der Lord Campbell's Act, where the latter has no claim
upon deceased, and the loss consists only in a pros-
pective benefit to which he was not legally entitled, as
where the beneficiary sues for the death of an adult
child, this author says:

"The distinction taken in the English cases has gen-
erally been observed in the United States, that is, the
plaintiff must show that the decedent gave assistance
to the parent, or that the parent had reasonable ex-
pectation of pecuniary benefit from the continued life
of the child. The proper measure of damages is the
present worth of the amount which it is reasonably
probable the deceased would have contributed to the
support of the parent during the latter's expectancy
of life in proportion to the amount he was contribut-
ing at the time of his death, not exceeding his expect-
ancy of life; though it would seem that the rule is not
to be applied with mathematical strictness, and that the
jury may properly take into consideration the increas-
ing wants of the parents, and the increasing ability of
the child to supply them. In some cases the evidence
has been held sufficient to sustain a finding that there

was a reasonable expectation of pecuniary benefit, although the evidence fell short of showing that assistance was actually rendered. In *Hutchins* v. *St. Paul M. & M. Ry. Co.* [44 Minn., 5, 46 N. W., 79], it was said 'the proper estimate can usually be arrived at with approximate accuracy by taking into account the calling of deceased and the income derived thereby, his health, age, talents, habits of industry, his success in life in the past, as well as the amount of aid in money or services which he was accustomed to furnish the next of kin, and if the verdict is greatly in excess of this sum thus arrived at, the court will set it aside, or cut it down.' " Tiffany's Death by Wrongful Act (2 Ed.), sec. 168.

It is necessary under the rule laid down by the supreme court, in order to entitle the beneficiaries to recover, that he show some reasonable expectation of pecuniary assistance or support of which he has been deprived, and the court held in *Michigan Central Railroad Co.* v. *Vreeland,* supra, that it was error to permit the jury to estimate the value of a husband's care and advice to his wife, even if such care and advice be considered a kind of service from him capable of measurement by pecuniary standard, where there was neither allegation nor evidence of such loss of service, care or advice.

Under the rule laid down in the several cases collected in Tiffany's Death by Wrongful Act (2 Ed.), sec. 184, it is doubtful if there is any sufficient pleading by the plaintiff below to justify a recovery in this

case.  No damages to the beneficiary of this suit of a pecuniary nature are averred in the declaration. Whether such an averment was necessary or not, we need not determine.  Certain it is there is no proof offered from which it appears that the plaintiff below had any reasonable expectation of pecuniary assistance or support from the deceased.  As we understand *Michigan Central R. Co.* v. *Vreeland,* supra, such proof is necessary to a recovery.

There being therefore, no evidence upon which a recovery in this case might be based, the motion of the railroad company for peremptory instructions should have been sustained.  The action of the lower courts in overruling such motion is here reversed, and the suit dismissed.